UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60996-CIV-COHN/SELTZER

FLEXITEEK AMERICAS, INC.,
a Florida Corporation, and
FLEXITEEK INTERNATIONAL AS,
a Foreign Corporation,

Plaintiffs,

vs.

PLASTEAK, INC., an Ohio Corporation,
PLASDECK, INC., an Ohio Corporation,
and ANDRE BATISTA, an individual,

Defendants.
_________________________________/

ORDER ON MOTION FOR SANCTIONS

THIS CAUSE is before the Court on Plaintiffs' Motion for Sanctions (DE 68) and the Court being sufficiently advised, it is hereby ORDERED that the Motion is GRANTED in part for the reasons set forth below.

In their Complaint, Plaintiffs allege that Flexiteek International owns (or, alternatively, has a proprietary interest in) a patent for a synthetic teak decking product and that Flexiteek Americas is the exclusive licensee of the patent. Plaintiffs have asserted a claim for patent infringement and a claim for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against PlasTEAK, Inc., PlasDECK, and Andre Batista.

During the course of the litigation, Defendants filed a Motion to Quash Subpoena and for Protective Order (DE 31). Plaintiffs had issued a subpoena out of this District for

William Gribble, who resides in Ohio, to appear for a deposition in Broward County, Florida. Pursuant to Federal Rule of Civil 45, a subpoena must be issued out of the federal district court where the deponent resides and the deposition must be held in that district or no more than 100 miles outside that district. Fed. R. Civ. P. 45(c)(3)(ii) and (iii).[1] Defendants moved the Court to quash the deposition subpoena and to require that any future deposition of Gribble be conducted in Ohio. They also requested that the deposition not be held until the District Court had ruled on their pending Motion to Dismiss for Lack of Standing.

Additionally, in their Motion to Quash and for Protective Order, Defendants requested that the Court "prohibit Plaintiff from inquiring into financial matters of the Defendants at [Gribble's] deposition." Motion at 3 (DE 31). In two sentences and without

---

[1] Although not a named defendant, Gribble is apparently an officer of the corporate defendants and, therefore, a subpoena may not have been required for his attendance at a deposition. See Schindler Elevator Corp. v. Otis Elevator Co., No. 06 Civ. 5377(CM)(THK), 2007 WL 1771509, at *2 (S.D.N.Y. June 18, 2007) ("Under Rule 30(b)(1) of the Federal Rules of Civil Procedure, a specific officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition."); McMahon v. Presidential Airways, Inc., No. 6:05-cv-1002-Orl-28JGG, 2006 WL 5359797, at *1 (M.D. Fla. Jan. 18, 2006) ("[A] subpoena is unnecessary to require officers, directors or managing agents of a corporate party to attend a deposition."). Even so, courts generally require that a deposition of a defendant should be held where the defendant resides or does business. See, e.g., Willis v. Mullins, No. CV F 04 6542 AWILJO, 2006 WL 302343, at *5 (E.D. Cal. Feb. 8, 2006) ("Although the federal rules do not prevent plaintiff's designating any place he chooses for the taking of a defendant's deposition, the cases indicate that it is presumed that a defendant will be examined at his residence or at his place of business or employment; if another place is named and defendant files a timely objection the objection should be sustained absent some unusual circumstance to justify putting the defendant to such inconvenience.")

any citation of authority, Defendants argued that Plaintiffs "should be prohibited from inquiring of the Defendants with regard to financial matters at the depositions as Plaintiff recently amended their initial disclosures to indicate that they believe that the correct way to calculate their damages is based on their own loss of profits. Accordingly, Defendants financial information is not relevant to the issues pending in this case." Id.

In their Response (DE 34) to that Motion, Plaintiffs explained the difficulty they had experienced in scheduling depositions and noted that they had issued the Gribble subpoena with the caveat (as permitted by the Discovery Practices Handbook) that they would be willing to reschedule the deposition at a mutually convenient time and place. Plaintiffs stated that the purpose of issuing the subpoena was to compel the unwilling Defendants to timely provide a date and place for the deposition; Plaintiffs, however, acknowledged that the subpoena was improper.

With respect to the financial inquiry, Plaintiffs, with citation of authority, argued that Defendants' financial information is relevant to calculating damages in a patent infringement suit whether such damages are determined by lost profits, the infringer's profits, or a reasonable royalty. In their Reply (DE 35), Defendants disputed Plaintiffs' alleged difficultly in setting depositions, and they again argued that the deposition should be delayed until after a ruling on their Motion to Dismiss. With respect to the financial inquiry, Defendants noted that in their Amended Initial Disclosures Plaintiffs asserted that their lost profits amounted to "$1,511,563,74" [sic], which had been "calculated through the use of past sales and accounting records." In support of their argument that no inquiry as to their financial matters should be permitted, Defendants cited Panduit Corp. v. Stahlin

Bros. Fibre Works, 575 F.2d 1152, 1156 (6th Cir. 1978), which set forth what a patent owner must show to prove damages for lost profits. Defendants argued that their sales were not part of the Panduit test. Because Defendants first cited this case in its reply memorandum, Plaintiffs did not have an opportunity to respond thereto.

On March 19, 2009, this Court entered an Order (DE 36) quashing the subpoena for the Gribble deposition, noting that the parties had agreed that Gribble's deposition would take place in Ohio. The Court also declined to stay the deposition pending a ruling on Defendants' Motion to Dismiss. And the Court stated that it would "not preclude Plaintiffs from inquiring into Defendants' financial matters at these depositions."[2] Order at 2 (DE 36).

On May 5, 2009, Plaintiffs filed the instant Motion for Sanctions (DE 68). In support, Plaintiffs state that during Gribble's deposition, he refused to answer any questions relating to Defendants' financial matters,[3] notwithstanding that the Court had previously ruled that Plaintiffs could inquire into that area. According to Plaintiffs, Defendants' attorney "made it abundantly clear in an improper speaking objection that Mr. Gribble would not answer any questions relating to Defendants' finances." Motion at 2 (DE 68). See also Gribble Dep. Tr. at 56 (DE 68-2). Plaintiffs also contend that Defendants' attorney improperly instructed Gribble not to answer questions about Defendants' finances.

As a basis for sanctions, Plaintiffs rely on Federal Rule of Civil Procedure 37(b)(2).

---

[2] Defendants' Motion to Quash and for Protective also mentioned the deposition of Defendant Andre Batista, but they made no argument as to this deposition.

[3] As noted above, Gribble is an officer of the corporate Defendants.

Rule 37(b)(2) provides that if "a party fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just." Rule 37(b)(2)(I)-(vii) enumerates various sanctions a court may impose for failing to obey a court order to provide or permit discovery: ordering that designated facts be established; refusing to permit the disobedient party to support or oppose certain designated claims; striking pleadings; entering a default judgment; holding the disobedient party in contempt; and requiring the disobedient party and/or the disobedient party's attorney to pay reasonable expenses, including attorney's fees. Additionally, Rule 37(b)(C) provides: "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."[4]

Plaintiffs also rely on Federal Rule of Civil Procedure 30(c)(2), which provides in pertinent part: "An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer [a deposition question] only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit a deposition] under Rule 30(d)(3)." In addition, Local Rule 30.1 authorizes sanctions for abusive deposition conduct, such as making "[o]bjections or statements which have the effect of coaching the witness, instructing the witness concerning the way in which he or she should frame a response,

[4] In its Motion, Plaintiffs requested that as sanctions the Court enter a default judgment in favor of Plaintiffs and to deem their asserted damages established, as well as require Defendants to pay the attorneys' fees it had incurred in taking Gribble's deposition.

or suggesting an answer to the witness" and "[i]nstructing a deponent not to answer a question except when to preserve a privilege, to enforce a limitation on evidence directed by the Court, or to present a motion under Federal Rule of Civil Procedure 30(d)[3]." S.D. Fla. L.R. 30.1(1) and (3). As sanctions for such abusive deposition conduct, the court may order that the party and/or his counsel pay the other party's "expenses, including travel, lodging, reporter's fees, attorneys' fees and videotaping expenses, for that portion of the deposition determined to be excessive." In addition, the Court may require that party or its counsel, or both, to pay "all such costs and expenses for any additional depositions or hearings made necessary by its misconduct." S.D. Fla. L.R. 30.1(D).

Upon review of Plaintiffs' sanctions motion, this Court determined that counsel's certificate of conferring failed to comply with Local Rule 7.1.A.3; it merely stated that "[t]he undersigned has attempted in good faith to confer with opposing counsel and opposing counsel has been non-responsive." Motion at 6 (DE 68). The Court noted that "[i]f counsel means that he/she tried to contact opposing counsel but was unable to do so, then the Local Rule requires that counsel set forth the efforts he/she made to confer with opposing counsel "with specificity." However, if counsel means that he/she did confer with opposing counsel in a good faith effort to resolve the issues, but they were unable to do so, then counsel should have clearly so stated." Order at 1 (DE 74). Consequently, the Court ordered the parties' counsel to confer in person or by telephone and attempt in good faith to resolve the issues raised by the instant Motion.

Counsel did confer, and they agreed that Gribble will submit to a telephonic deposition and answer questions relating to Defendants' financial matters and that

Defendants will pay the court reporter's attendance fee for the second deposition.[5] See Defendants' Response at 1 (DE 84). The parties, however, were unable to resolve whether Plaintiffs are entitled to any monetary sanction for bringing their Motion for Sanctions. That issue only, therefore, remains for the Court's determination.

At Gribble's deposition, when Plaintiffs' attorney asked the first question relating to Defendants' finances – whether Gribble knew about Defendants' profits on their alleged infringing products – Defendants' attorney objected on the basis of relevancy; he argued that Defendants' profits had no place in Plaintiffs' calculation of their lost profits. Defendants' attorney stated he was instructing Gribble not to answer unless Plaintiffs' attorney could show the relevancy of Defendants' profits. Defendants' attorney then stated that unless Plaintiffs informed Defendants that Plaintiffs would be using another method to calculate damages, he would not change his position. When Plaintiffs' attorney responded that Plaintiffs were considering all methods of calculating damages, Defendants' attorney replied that Plaintiffs' attorney could tell him whatever he wished but he was not going to change his position at that stage. Defendants' attorney additionally stated that he was already at a disadvantage because Plaintiffs had no intention of permitting him to speaking to the persons who had articulated Plaintiffs' damages theory and that he was not going to make things worse by permitting Plaintiffs to now change their previous representation that they would calculate their damages based on their lost profits. Plaintiffs' attorney indicated that he understood and made no further inquiry into

---

[5] Plaintiffs agreed that they will withdraw Gribble's deposition transcript from the record.

Defendants' financial matters.

In response to the Motion for Sanctions, Defendants argue that their attorney did not act in bad faith in objecting to Plaintiffs' attorney's inquiry into Defendants' financial matters. Defendants note that Plaintiffs' attorney had asked only one financial question, and he did not inquire into the sales information that Defendants had provided to Plaintiffs before the deposition. Through Defendants' attorney's speaking objection, however, he made it abundantly clear that we would not permit Gribble to testify as to any financial questions. Defendants also argue that the Court's March 19, 2009 Order did not set forth the nature and extent of the inquiry permitted; instead, it merely stated that "the Court will not preclude Plaintiffs from inquiring into Defendants' financial matters. . . ." However, logic dictates that where Defendants had requested the Court to preclude Plaintiffs from inquiring into their financial matters and where the Court had declined to do so, the Court expected Defendants to answer such inquiries. Instead, Defendants' attorney instructed Gribble not to answer based on the same argument it had raised in its Motion for Productive Order – the same argument that the Court had rejected. Moreover, Defendants' attorney's instruction to Gribble not to answer the inquiry violated both Rule 30(c)(2) and Local Rule 30.1. Accordingly, the Court finds that a monetary sanction is warranted.

Plaintiffs, however, have not provided the Court with any information as to the attorneys' fees they incurred in bringing their Motion for Sanctions. They, however, indicated in their reply memorandum that when conferring with opposing counsel their attorney had requested $1,000 in attorney's fees. The Court, however, will not award the full amount of this request.

The Court had previously found that Plaintiffs' attorney's certificate of conferring was deficient. It now finds that not only was the certificate deficient, Plaintiffs' attorney's attempt to "confer" clearly was not made in good faith. Defendants note that the only attempt Plaintiffs' attorney made to confer to resolve the issues raised by the Motion for Sanctions (as required by Local Rule 7.1.A.3) was sending a May 4, 2009 e-mail which stated: "Attached please find our proposed Motion for Sanctions which we intend to file in this matter. If, however, you agree to a stipulation that Plaintiffs' damages are established to be $5,742,206.00 as calculated by Plaintiffs, then we will agree not to file the attached motion. Please let us know your decision immediately." May 4, 2009 e-mail, Ex. A to Response (DE 84). Plaintiffs then filed the Motion for Sanctions the next day. This e-mail fails to comply with both the letter and spirit of Local Rule 7.1.A.3; not only was Plaintiffs' attorney's "conferring" not done in good faith, it failed to even attempt to resolve the matters at issue. Rather, the e-mail merely presented Defendants with a Hobson's choice – either admit that Plaintiffs had suffered more than $5,000,000 in damages or face sanctions. Plaintiffs' attorney's failure to confer in accordance with the letter and spirit of the Rule is grounds to deny an award of any sanctions, monetary or otherwise. See Local Rule 7.1.A.3 ("Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee."). Nonetheless, the Court cannot condone Defendants' counsel's willful disregard of the Court's March 19, 2009 Order nor his instruction not to answer a deposition question in clear violation of Federal

Rule of Civil Procedure 30(c)(2) and Local Rule 30.1. The Court, therefore, will require Defendants' attorney to pay $500 to Plaintiffs as partial reimbursement for the attorney's fees they incurred in bringing the instant Motion.

Based on the foregoing and the parties agreement, it is hereby ORDERED as follows:

1. William Gribble shall submit to a telephonic deposition at a mutually convenient date and time and answer questions as to Defendants' financial matters (as agreed to by the parties);

2. Defendants shall pay the appearance fee of the court reporter for the second deposition (as agreed to by the parties); and

3. Within 30 days of the date of this Order, Defendants' attorney, Bruce Wilson, Esq. (and **not** Defendants or Gribble) shall pay to Plaintiffs the sum of $500 as partial reimbursement for the attorney's fees they incurred in bringing the instant Motion for Sanctions.

DONE AND ORDERED in Fort Lauderdale, Florida, this 18th day of May 2009.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record