UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-60996-CIV-COHN/SELTZER

FLEXITEEK AMERICAS, INC.,
et al.,

        Plaintiffs,

v.

PLASTEAK, INC., et al.,

        Defendants.
_____/

## ORDER DENYING DEFENDANTS' RENEWED MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendants' Renewed Motion to Dismiss [DE 48].[1] The Court has considered the Motion, Plaintiffs' Response [DE 60], Defendants' Reply [DE 67], the record in this case, the argument of counsel on June 4, 2009, and is otherwise advised in the premises.

### I. BACKGROUND

This action is based on Plaintiffs' claim that Defendants have sold or installed products that infringe on US Patent No. 6,895,881 ("the '881 patent"). The subject matter of the '881 patent is a synthetic teak decking product that is often used with marine vessels. The Plaintiffs consist of Flexiteek International AS ("Flexiteek International"), which according to Plaintiffs is the "owner" of the '881 patent, and Flexiteek Americas, Inc. ("Flexiteek"), which is the United States subsidiary of Flexiteek

---

[1] On April 1, 2009, this Court entered an Order Denying Defendants' Motion to Dismiss without Prejudice [DE 41]. That Order stated that Defendants could raise the argument which formed the basis of their Motion to Dismiss, i.e., that Plaintiffs lack standing, at the summary judgment stage and that the Court would address the issue in light of the full record.

International that markets, sells and distributes the products embodied by the '881 patent in the United States.

1. **Relevant Facts**

There is no dispute that Derek Gordon Whitaker is the original creator of an invention that eventually formed the basis of the '881 patent. Indeed, he is listed on the '881 patent as the original inventor. (Response at 4.) On June 24, 1999, Whitaker filed a Great Britain patent application for a "Shape Conforming Surface." (DE 30-2.) On October 8, 1999, Whitaker filed another Great Britain patent application disclosing similar subject matter. (See DE 30-3.)

On March 7, 2000, Flexiteek International and Whitaker entered into an agreement ("Agreement") which states: "the undersigned buys all interests of Flexiteek, production equipment, recepies [sic], established customer contacts, brand name, patents and so on from Derek Whitaker." (DE 30-5 at 4.) In exchange, Whitaker received £ 250,000.00, royalty fees, a 10% share of stock in Flexiteek International and a 36-month employment contract as Manager of Research and Development with Flexiteek International. (Id.) According to Plaintiffs, on June 19, 2000, Flexiteek converted the intellectual property acquired through the Agreement, including the two Great Britain patent applications filed by Whitaker, into International Patent Application Number PCT/SE00/0132 ("PCT Application") for a "Shape Conforming Substance." (Id.) The PCT Application claims priority to both of the Great Britain applications. (Id.)

A dispute arose between Flexiteek International and Whitaker on February 5, 2001 regarding the ownership to the patent rights of the PCT Application, precipitated by Whitaker's refusal to sign a formal assignment. On March 30, 2001, a District Court

of Stockholm entered a decision stating that "[t]he District Court declares that Flexiteek International A/S has a better right than Derek Whitaker to [the PCT Application]." (DE 30-8 at 1.) By letter dated October 16, 2001, Flexiteek International requested that the World Intellectual Property Organization ("WIPO") register Flexiteek International as "applicant/owner" of the PCT Application. (See DE 30-9.) The letter attached copies of the Agreement and the Stockholm District Court's decision and briefly described the circumstances. (Id.) On October 30, 2001, the WIPO officially registered Flexiteek Interantional as the "applicant/owner" of the PCT Application. (Response at 2-3.) The WIPO's notification indicated that Flexiteek International would "be added to the records as applicant for all designated States except the United States of America" where Whitaker would still be recorded as "applicant/inventor." (DE 30-10.)[2]

On December 21, 2001, Flexiteek international converted the PCT Application into a US patent application under the name of Whitaker. (Response at 3.) On February 14, 2002, the United States Patent and Trademark Office ("PTO") notified Flexiteek International that the application was deficient because it was missing the oath or declaration signed by the inventor. (See DE 30-12.) On April 10, 2002, Flexiteek International filed a Petition for Filing by Assignee with the PTO stating that the invention was developed "under the authorization" of Flexiteek International by Whitaker, "who was employed by Flexiteek International to do so." (DE 30-13 at 1-2.) In addition, the Petition indicated that Whitaker refused to join in the application. (Id. at

---

[2]   US patent law requires that a patent application be made in the name of the inventor. 37 C.F.R. § 1.41(a) ("A patent is applied for in the name or names of the actual inventor or inventors."). However, US patent law does provide procedures for the filing of patent applications by non-inventors "when an inventor refuses to sign or cannot be reached." 37 C.F.R. § 1.47.

3

1.) The PTO dismissed the Petition without prejudice because there was no showing that Whitaker had been presented with the application and refused to make the oath or declaration. (Response at 3.) Flexiteek International filed a Renewed Petition on March 3, 2003 correcting this deficiency, however, the PTO rejected the Renewed Petition because it did not identify Whitaker's citizenship. (Id. 3-4.) On August 5, 2003, Flexiteek International filed another Petition correcting the defects noted by the PTO. (Id. at 4.) On September 17, 2003, the PTO granted the "Renewed Petition Under 37 CFR 1.47(b)" filed on August 5, 2003. (DE 30-20.) The same day, the PTO notified Whitaker that he would be named as an inventor on the US patent application and that he would also be designated as an inventor should a patent be granted. (DE 30-21.) The PTO also informed Whitaker that he would have the right to inspect any paper filed in connection with the application and that he could join the application by filing the appropriate oath or declaration. (Id.) Whitaker never took any steps to join the application. (Response at 4.)

On November 22, 2004, The PTO issued a Notice of Allowability on the US patent application to Flexiteek International. (Id.) The '881 patent was issued on May 24, 2005 listing the predecessor document as the PCT Application. (Id.)

### 2.     **Parties' Arguments**

Defendants argue that the action should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs lack standing. Defendants assert that Derek Gordon Whitaker is the owner of the '881 patent and that this action must be dismissed because Plaintiffs have not sued on behalf of Whitaker, nor have they joined him as a plaintiff. Defendants rely on the fact that the '881 patent is issued in the name of Whitaker as the inventor. In addition, Defendants point out that at the

4

time the Agreement was entered into, neither the '881 patent application, nor PCT Application upon which it was based, had been filed.

Plaintiffs argue that under the plain language of the Agreement, Whitaker "conveyed all of his rights to both of his patent applications" filed in Great Britain to Plaintiffs. (Response at 8.) The subject matter of these two patents was converted into the PCT Application and ultimately led to the '881 patent. Plaintiffs also rely the decision from the District Court of Stockholm and extrinsic evidence to support their interpretation. Further, Defendants argue that an "inventor is not necessarily the owner, and being named as inventor on a patent application does not make a person an owner." (Id. at 15.)

In Reply, Defendants argue that the language contained in the Agreement is vague and "makes no mention of future interests." (Reply at 1.) Defendants also argue that an inventor is presumed to be the owner of the property rights embodied in a patent. Finally, Defendants accuse Plaintiffs of taking inconsistent positions throughout the course of this litigation.

## II. LEGAL STANDARD

An action may proceed in this Court only if federal subject matter jurisdiction exists. Lifestar Ambulance Serv., Inc. v. United States, 365 F.3d 1293, 1295 (11th Cir. 2004), cert. denied, 543 U.S. 1050 (2005).[3] The party asserting jurisdiction has the burden of establishing jurisdiction. Kokkonen v. Guardian Life Ins. Co. Of Am., 511 U.S. 375, 377 (1994). Rule 12(b)(1) permits litigants to move for dismissal when the court lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1).

---

[3] Procedural issues in patent cases, such as dismissal of a complaint for lack of subject matter jurisdiction, are governed by the standard of the circuit in which a district court sits. Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1380 (Fed. Cir. 2002).

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." Cone Corp. v. Florida Dep't of Transp., 921 F.2d 1190, 1203 (11th Cir. 1991).

"Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (internal citations omitted). The instant Motion is a factual attack under Rule 12(b)(1) challenging whether Plaintiffs have established standing to bring this action. In considering such motions, there is no presumption of truth attached to a plaintiff's allegations and "'there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" Id. at 1529 (quoting Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981), cert. denied, 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d 212 (1981)).

### III. ANALYSIS

The Patent Act provides that only "[a] patentee" is entitled to bring a civil action "for infringement of his patent." 35 U.S.C. § 281. The term "patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." Id. § 100(d). "Those provisions of the Patent Act have been interpreted to require that a suit for infringement of patent rights ordinarily be brought by a party holding legal title to the patent." Propat Intern. Corp. v. Rpost, Inc., 473 F.3d 1187,

1189 (Fed. Cir. 2007).

"Although 'ownership' and 'inventorship' are not identical for patent law purposes, they are related. Inventorship provides the starting point for determining ownership of patent rights. The true and original inventor must be named in the application for a patent and, absent some effective transfer or obligation to assign the patent rights, the original inventor owns the right to obtain the patent." University Patents, Inc. v. Kligman, 762 F.Supp. 1212, 1218-19 (E.D. Pa. 1991) (citing D. Chisum, Patents § 22.02 (1990)). Patents have the attributes of personal property and both patents and applications for patents are assignable. 35 U.S.C. § 261. Section 261 provides in pertinent part:

> Subject to the provisions of this title, patents shall have the attributes of personal property....
>
> Applications for patents, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

35 U.S.C. § 261. "[A]n assignee is the patentee and has standing to bring suit in its own name." Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998).

### 1. The Plain Language of the Agreement Supports Plaintiffs' Position

An assignment of a patent must be in writing. 35 U.S.C. § 261. "The writing must show a clear and unmistakable intent to transfer ownership." Kligman, 762 F.Supp. at 1219 (citing McClaskey v. Harbison-Walker Refactories Co., 138 F.2d 493 (3d Cir. 1943). "[T]he patentee may effect a transfer of ownership for standing purposes if it conveys all substantial rights in the patent to the transferee." Rpost, 473 F.3d at 1189. Here, the relevant Agreement states: "the undersigned buys all interests

7

of Flexiteek, production equipment, recepies [sic], established customer contacts, brand name, patents and so on from Derek Whitaker." (DE 30-5 at 4.) The Court holds that this Agreement transferred to Plaintiffs "all substantial rights" in Whitaker's invention and his Great Britain patent applications. This holding is supported by the broad and unequivocal language that "the undersigned buys all interests of Flexiteek . . . ." Whitaker is also identified in the Agreement as "Seller" and all of the individuals listed as a "Buyer" in the Agreement are principals of Flexiteek International (Id.). "Nor is there any indication anywhere, explicit or otherwise, that Whitaker intended to retain any interest in the patents or related subject matter of his invention." (Response at 11.)[4] Defendants argue that there "is little indication in the Agreement as to what 'Flexiteek' is." (Motion at 6.) However, in describing Whitaker's royalty arrangement, the Agreement states that Whitaker will be paid "a royalty fee of GBP 2,50 per square meter Flexiteek sold." (DE 30-5 at 4.) This leads to the reasonable conclusion that "Flexiteek" is the invention or product underlying the "patents" described in the Agreement. Moreover, Defendant has not put forward any reasonable interpretation that would lead to a different conclusion.

Defendants also argue that at the time the Agreement was executed, neither the PCT Application or the US application had been filed. (Motion at 6.) However, the Agreement states that Flexiteek International "buys all interests of Flexiteek, . . . patents and so on from Derek Whitaker." (DE 30-5 at 4.) By the time the Agreement was entered into, Whitaker had filed two patent applications in Great Britain, patent applications on which the PCT Application and the US patent application were based.

---

[4] A retention of royalty rights is insufficient to invalidate an assignment. See Kenyon v. Automatic Instrument Co., 160 F.2d 878, 882 (6th Cir. 1947) (citing Rude v. Westcott, 130 U.S. 152 (1889).

8

Further, "[a]n assignment is not invalidated because the invention is assigned before the patent issues." Kenyon, 160 F.2d at 882. The Supreme Court has found that:

> inventors' rights are never derivative, and they, even before the patent is issued, have the exclusive inchoate right not only to the original patent that may issue, but to any reissue, renewal, or extension that may thereafter be granted under the Patent Act. Authorities to support that proposition are numerous and decisive, and it is equally clear that they may sell, assign, or convey the invention, including the inchoate right to obtain the patent, and to surrender and reissue it or to procure a renewal or extension of the monopoly from the commissioner, if the instrument of assignment contains apt words to show that such was the intent of the grantor.

Hendrie v. Sayles, 98 U.S. 546, 551 (U.S. 1879).

Although Defendants argue that the Agreement is imprecise and that it does not mention "future interests," there has never been any alternative interpretation presented to this Court of what was conveyed by the Agreement if it was not the subject matter of Whitaker's two Great Britain patent applications. The Court acknowledges that the parties could have been more precise, however, the broad language contained in the 1-page Agreement supports Plaintiffs' argument that Whitaker transferred ownership of the invention and patent applications that led to the '881 patent. See Kenyon, 160 F.2d at 882 ("the meaning of any contract is to be primarily derived from the words used by the parties, however ill suited or badly chosen they may seem to judicial or other critics") (citations and quotations omitted).

### 2. The Surrounding Circumstances and Extrinsic Evidence Weigh Heavily in Favor of Plaintiffs

"Whether a transfer constitutes a sale or license is determined by the substance of the transaction and a transfer will suffice as a sale if it appears from the agreement and surrounding circumstances that the parties intended that the patentee surrender all his substantial rights to the invention." Bell Intercontinental Corp. v. United States, 381 F.2d 1004, 1011 (Ct. Cl. 1967). In order to determine whether a patentee has

9

conveyed "all substantial rights," the Court "must look to the agreement between the parties and analyze the respective rights allocated to each party under that agreement." Rpost, 473 F.3d at 1189. Turning to the circumstances of this case, the Court finds it probative that Whitaker received £ 250,000.00, royalty fees, a 10% share of stock in Flexiteek International and a 36-month employment contract as Manager of Research and Development with Flexiteek International. Again, the only reasonable interpretation presented of what Whitaker received in exchange for this substantial consideration is the two Great Britain patent applications and the underlying invention. In addition, approximately 3 months after the Agreement, Flexiteek International filed the PCT Application based on the same technology included in the two patent applications Whitaker filed in Great Britain. Therefore, Flexiteek International took actions shortly after execution of the Agreement, which are consistent with Plaintiffs' interpretation of the import of that Agreement.

All of the extrinsic evidence before this Court squarely supports Plaintiffs' reading to the Agreement. In opposing Defendants original Motion to Dismiss, Plaintiffs submitted the Declaration of Anders C. Wilhelmsen. (See DE 30-5.) In the Declaration, Mr. Wilhelmsen, who is one of the founding members of Flexiteek International and a signatory to the Agreement, states that the "Agreement was such that Whitaker sold or assigned all of his interest in the technology [that resulted in the '881 patent], including patent rights, know-how, and trade secrets in exchange for a portion of the company, royalty payments, and a position [with Flexiteek International]." (Id. ¶ 4.) Plaintiffs also rely on the decision from a District Court of Stockholm that adjudicated a dispute between Flexiteek and Whitaker over the rights to the PCT Application. After conducting a proceeding in which Whitaker was represented by counsel, the District Court entered a decision stating that "[t]he District Court declares

that Flexiteek International A/S has a better right than Derek Whitaker to [the PCT Application]." (DE 30-8 at 1.) Defendants argue that an "equitable right to proceed with a PCT application is not the same as having legal title to a future patent not yet allowed." (Reply at 1.) This may be true, however, Defendants do not point to affirmative evidence to support their position that Whitaker retained substantial rights in the '881 patent so as to obviate Plaintiffs' standing to bring this action.[5] In addition, the Stockholm District Court's decision merely supports this Court's own independent determination that Whitaker conveyed all substantial rights to the invention and related patents to Flexiteek International.

Defendants also argue that Plaintiffs have taken inconsistent positions throughout the course of this litigation. (See Reply at 8-10.) In contesting Defendants' affirmative defense of inequitable conduct, Plaintiffs argued that one of the reasons they did not disclose the revocation of a New Zealand patent to the PTO was because the invention disclosed in the '881 patent had new technology which made the New Zealand patent immaterial. Defendants claim that "[i]f the inventive novelty of the '881 patent was not disclosed in the New Zealand patent, then it was not disclosed in the PCT application, and it was not disclosed in the British applications, and it didn't exist at the time of the March 2000 Agreement with Whitaker." (Id. at 9-10. However, if the "inventive novelty" of the '881 patent was not disclosed in the British applications and did not exist at the time of the Agreement, then it appears that the inventive novelty of the '881 patent was created by Flexiteek International, not Whitaker. There is no

---

[5] Defendants place great emphasis on the fact that Whitaker is named as the inventor on the '881 patent. The "inventor must be named in the application for a patent and . . . the original inventor owns the right to obtain the patent." University Patents, Inc. v. Kligman, 762 F.Supp. at 1218-19. However, that right can be assigned, and if so, the assignee has standing to sue in its own name. Enzo, 134 F.3d at 1093.

11

evidence before this Court that would lead to the conclusion that the new technology is attributable to anyone other than Plaintiffs.

Finally, at oral argument, Defendants argued that the Court should not rule on the issue of standing without hearing from Whitaker. However, Defendants have had nearly a year since the Complaint was filed to secure evidence from Whitaker and they have failed to do so. Moreover, the Defendants have failed to provide any reasonable interpretation of the agreement or extrinsic evidence that would persuade this Court to reserve judgment at this late stage of the litigation. Accordingly, the Court finds that Plaintiffs have adequately demonstrated that they have standing to bring this suit and Defendants' Motion must be denied.

## IV. CONCLUSION

For the foregoing, it is **ORDERED AND ADJUDGED** that Defendants' Renewed Motion to Dismiss [DE 48] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 14th day of June, 2009.

James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF