UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-60996-CIV-COHN/SELTZER

FLEXITEEK AMERICAS, INC.,
et al.,

      Plaintiffs,

v.

PLASTEAK, INC., et al.,

      Defendants.

_____/

## CORRECTED ORDER DENYING DEFENDANTS' MOTION TO RECONSIDER, ALTER OR AMEND[1]

**THIS CAUSE** is before the Court on Defendants' Motion to Reconsider, Alter or Amend Order Granting in Part Plaintiffs' Motion for Summary Judgment [DE 124]. The Court has considered the Motion, Plaintiffs' Response [DE 130], the argument of counsel on June 16, 2009, the applicable law, the record in this case, and is otherwise advised in the premises.

Defendants' Motion asks this Court to reconsider, alter or amend its holdings with respect to standing and invalidity contained in the Order Granting in Part Plaintiffs' Motion for Summary Judgment [DE 112]. This Court fully articulated its reasoning with regard to the standing issue in the Order Denying Defendants' Renewed Motion to Dismiss [DE 126] and the Court holds that there is no reason reconsider, alter or amend that ruling. Accordingly, this Order will focus on the two remaining issues raised in Defendants' Motion, anticipation and obviousness.

_____

[1]    This Order corrects a typographical error contained on page 18 of the original order which stated that "a hearing on" the instant Motion is denied. This Order removes the words "a hearing on" to clarify that the instant Motion is denied.

## I. BACKGROUND

This action is based on Plaintiffs' claim that Defendants have sold or installed products that infringe on US Patent No. 6,895,881 ("the '881 patent").  The subject matter of the '881 patent is a synthetic teak decking product that is often used with marine vessels.

1.    **The Original Invention**

On June 24, 1999, Derek Gordon Whitaker filed a Great Britain patent application for a "Shape Conforming Surface." (DE 30-2.)  On October 8, 1999, Whitaker filed another Great Britain patent application disclosing the subject matter as "Flexible Surface Covering." (DE 30-3.)  On March 7, 2000, Flexiteek International AS ("Flexiteek International") and Whitaker entered into an agreement whereby Whitaker assigned his rights to the Great Britain patent applications and the underlying invention to Flexiteek International. (See Ex. A to DE 30-5.)  In exchange, Whitaker received £250,000.00, royalty fees, a 10% share of stock in Flexiteek International and a 36-month employment contract as Manager of Research and Development with Flexiteek International. (Id.)

On June 19, 2000, Flexiteek International converted the intellectual property acquired through the agreement, including the two Great Britain patent applications filed by Whitaker, into International Patent Application Number PCT/SE00/0132 ("PCT Application") for a "Shape Conforming Surface Covering." (DE 30-6.)  The PCT Application claims priority to both of the Great Britain applications. (Id.)

2

## 2.    The New Zealand Patent

On September 12, 2001, Flexiteek International filed a New Zealand patent application for a "shape conforming surface covering," which claimed priority in the two Great Britain patent applications. (See DE 124-9 at 2.)  A notice of acceptance of the New Zealand patent application issued on September 23, 2002. (Id.)  In 2003, Flexiteek International filed a lawsuit against Tek-Dek NZ Limited ("Tek-Dek") for infringement of the New Zealand patent.  In response to that suit, Tek-Dek filed an application for revocation of the New Zealand patent on July 4, 2003.

The infringement action was settled in August 2004 with Tek-Dek "agreeing to a destruction of all infringing products, an injunction from selling any further infringing products in New Zealand, and payment of money damages and costs." (DE 59-4 ¶ 8.) Nevertheless, the revocation proceedings went forward.  After filing a counterstatement in the revocation proceeding, Flexiteek International declined to participate any further. According to Svein Abrahamsen, President and CEO of the company, Flexiteek International "elected to abandon the New Zealand Patent for a variety of reasons. First and foremost, the amount of business from sale of Flexiteek's synthetic teak decking products in New Zealand did not warrant the expense of contesting the pending application for revocation.  Secondly, since the New Zealand Patent was granted in September 23, 2002, there was a substantial change in the technology of synthetic teak decking products which made the claims in the New Zealand Patent outdated." (Id. ¶ 10.)  On April 18, 2005, the Intellectual Property Office of New Zealand ("IPONZ") issued a decision revoking the New Zealand patent. (See DE 124-9.)  In particular, the IPONZ found "that grounds [of prior publication, obviousness and not an invention] have been made out.  I do not believe there is any basis for amendment to save any

aspect of the claims as accepted. The patent is revoked." (Id. at 32.)

## 3.    The US Patent

On December 18, 2001, Flexiteek International converted the PCT Application into a US patent application with Whitaker named as the applicant. (DE 30-11.) The United States Patent and Trademark Office ("PTO") did not accept the patent application until August 5, 2003, after Flexiteek took several procedural steps required as a result of Whitaker's lack of cooperation in the application process. (DE 30-20.) In a communication, dated June 1, 2004, the PTO rejected the US patent application as filed. (See DE 124-2.) Specifically, the PTO found that "[c]laims 1-17 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention." (Id. at 4.) In addition, the PTO found that "[c]laims 1-4, 6, 7, 8, 16 and 17 are rejected under 35 U.S.C. 103(a) as being unpatentable over Zwilgmeyer in view of Anstadt." (Id. at 5.) In discussing "obviousness," the patent examiner also cited the patents of Harshberger, Hinds et al., and Hunter et al. (Id. at 8.) The patent examiner also cited the Klammt patent "to show grooved flat bottoms." (Id.)

On September 1, 2004, Plaintiffs' patent counsel replied to the PTO and submitted an application including 26 claims with "amendments and remarks" in response to the communication discussed above. (See DE 46-3 at 36-56.) In a communication, dated October 13, 2004, the PTO rejected claims 1-14 and 16-26 and allowed claim 15. (See DE 124-3.) Specifically, the PTO found that "[c]laims 14 and 20 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention." (Id. at 2.) In addition, the PTO rejected a number of claims as being

4

anticipated under 35 U.S.C. § 102(b) or unpatentable under 35 U.S.C. § 103(a) in light

of prior art. (See id. at 3-8.) The PTO found that claim 15 was allowable, and this was

the sole claim that was included in the '881 patent.

The PTO issued a Notice of Allowance regarding the US patent application on

December 7, 2004. (See Exhibit C to DE 59-4.) The '881 patent was issued on May

24, 2005, identifying the claim as follows:

> A shape conforming surface covering useful for covering any type of
> surface, characterized in that the surface covering comprises planks or
> sheet of flexible material adapted to be interconnected aside of each other
> thereby forming an assembled surface covering of optional length and
> width, and which planks are of a material that can be laid in curved
> formations, and which at the upper surface of the covering is roughened
> so as to imitate any unique grain effect of wooden material, further
> characterized in that the planks or sheet are formed with longitudinal slots
> at the underside thereof for facilitating forming of curved coverings and for
> acting as a base for a glue or adhesive material by means of which the
> surface covering is mounted on a surface recipient.

(Exhibit V to DE 52-4.)

## 4.  Relevant Procedural History of this Action

Plaintiffs first took issue with Defendants' discovery failures specific to

Defendants' ability to support its affirmative defenses that the '881 patent was invalid on

March 30, 2009, when Plaintiffs filed their Motion to Strike Affirmative Defenses [DE

38].[2]  In that Motion, Plaintiffs argued that Defendants failed to produce or identify any

---

[2]      Although this Order focuses on the inadequacy of Defendants' disclosure
regarding anticipation and obvious, the Court notes that were also deficiencies on the
part of the Plaintiffs in the course of this litigation. After a contentious discovery period,
during which a number of motions were filed by both sides, the Court entered an Order
Denying Motions to Strike [DE 77] on May 8, 2009. After noting violations of the Local
Rules, but declining to strike the parties' submissions, the Court stated: "The parties
should consider themselves warned.  This Court will expect strict compliance with the
Local Rules and the Rules of Federal Procedure going forward."  (DE 77 at 2.)  In this
regard, the Court capped the potential damages Plaintiffs could receive and precluded
Plaintiffs from arguing infringement under the doctrine of equivalents due to untimely
disclosures.

5

prior art or documents, other than citing the entire prosecution history, that could support Defendants' affirmative defenses of anticipation and obviousness.  Plaintiffs requested that the Court strike these affirmative defenses, among others, because "Defendants' affirmative defenses state legal theories only with no facts at all to support the claimed defense and do not provide any explanation whatsoever for their assertion." (DE 38 at 9.) Defendants filed a 6-page response arguing that Plaintiffs' Motion was untimely and pointing out that when Plaintiffs contacted Defendants on March 30, 2009[3] to raise the insufficiency of the affirmative defenses, Defendants served Plaintiffs with a Supplement to Defendants' Initial Disclosure. (See DE 45.) The Supplement identified pleadings and attachments filed by another party in a related infringement action involving Plaintiffs in the Southern District of Florida. (See DE 52-15.) In reply, Plaintiffs argued that Defendants misconstrued the Motion to Strike as challenging whether Defendants' affirmative defenses met the "pleading requirements" of the Federal Rules of Civil Procedure, whereas the actual thrust of the motion was to "challenge the adequacy of the Defendants' Initial Disclosures and Discovery Responses." (DE 55 at 1-2.) "Defendants, despite ample opportunity, have declined to support their defenses or at least explain how they apply to the facts of this case." (Id. at 5.)

On June 4, 2009, the Court heard argument on the Motion to Strike, as well as several other pending motions.  The Court denied the Motion to Strike given that Defendants' affirmative defenses were at issue in several other motions to be heard by the Court that day, including Plaintiffs' Motion for Summary Judgment [DE 52].

---

[3]     The Scheduling Order [DE 11] in this action directed that fact discovery was to be completed as of March 13, 2009 and expert discovery was to be completed by March 27, 2009.

Plaintiffs filed a Motion for Summary Judgment [DE 52] on April 10, 2009.  In that Motion, Plaintiffs again attacked Defendants' showing with respect to the affirmative defenses of anticipation and obviousness.  "During discovery the Defendants have never disclosed [any] relevant prior art to the '881 patent or one skilled in the prior art who can testify about the affirmative defenses related to Invalidity . . . ."  (DE 52-13 at 6.)  By contrast, the Plaintiffs argued that they offered the report of Plaintiffs' expert who compared the available prior art to the '881 patent and concluded that it contained three novel and inventive steps.  (Id. at 14.)  Defendants responded that it would be improper for the Court to grant summary judgment on the issue of invalidity without first conducting a Markman hearing.  (See DE 61 at 4.)  Defendants, however, made no attempt to address the merits of the issues of anticipation and obviousness or identify any prior art that would support these affirmative defenses.

At the June 4th hearing mentioned above, the Court conducted a Markman hearing prior to addressing Plaintiffs' Motion for Summary Judgment.  Prior to the claim construction hearing, the parties submitted a Joint Statement Regarding Claim Construction [DE 103] which identified 21 discrete terms or phrases contained in the claim embodied in the '881 patent.  The parties agreed on 14 terms or phrases and the Court resolved the disputes concerning the remaining 7 at the hearing.  The Court then heard argument on Plaintiffs' Motion for Summary Judgment and Defendants failed to present argument or point to evidence on file sufficient to persuade this Court that a reasonable juror could determine that the '881 was invalid on the basis of anticipation or obviousness.

At the hearing, Defendants did little more than point to the IPONZ decision which found the New Zealand patent to be invalid.  However, Defendants did not demonstrate

that genuine issues of material fact existed on the issues of anticipation or obviousness in light of the evidence set forth by Plaintiffs. Such evidence included (1) the expert report submitted by Plaintiffs' expert which discussed his review of prior art and his opinion why the '881 patent was valid, (DE 52-12); (2) the testimony of Mr. Abrahamsen that the invention evolved between the issuance of the New Zealand patent and the '881 patent involved in this case, (DE 59-4); and (3) an analysis and chart submitted by Plaintiffs to demonstrate that the prior referenced in the IPONZ decision was "redundant" of prior art that was disclosed to or discovered by the PTO. (DE 59-3 at 10-11.) Accordingly, the Court granted summary judgment in favor of Plaintiffs on the issues of anticipation and obviousness.

On June 14, 2009, literally on the eve of trial, Defendants filed the instant Motion. In the Motion, Defendants identified specific patents and prior art references that allegedly render the '881 patent invalid. In an Order setting a June 16, 2009 hearing on the Motion, the Court acknowledged "that granting a motion for summary judgment on the issue of invalidity is rare," but pointed to the record in the case demonstrating Defendants' continued failure to articulate why the '881 patent is invalid with any degree of particularity. (DE 131 at 1.) The Court went on to state that the "[t]his lack of particularity is not cured in the Defendants' Motion for Reconsideration, although some effort is made. Therefore, the Court will allow Defendants one last opportunity to demonstrate why summary judgment should not be entered." (Id.)

Plaintiffs filed a Response to Defendants' Motion arguing that Defendants cannot meet the standard imposed by Rule 59(e) of the Federal Rules of Civil Procedure because a motion filed pursuant to this rule "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of

judgment." (DE 130 at 6) (citing Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (emphasis supplied by Plaintiffs)). Plaintiffs assert that "Defendants spend a considerable amount of time in the Motion for Reconsideration attempting to establish a list of prior art that should have been produced in opposition to the motion for summary judgment in order to create [an] issue of fact on the affirmative defense(s) of invalidity well after the time for doing so has passed." (DE 130 at 3.) Further, "Defendants have demonstrated no evidence of reasonable diligence to obtain the documents in the IPONZ proceeding to use in the defense of the summary judgment motions." (Id. at 5.) Therefore, the Response states that the "Plaintiffs should [not] pay, and the Defendants should [not] be rewarded for their lack of diligence." (Id.)

## II. LEGAL STANDARD

"'The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" Z.K. Marine Inc. v. M/V Archigetis, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). "A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made[.]" Id. "In order to reconsider a judgment there must be a reason why the court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Association For Disabled Americans, Inc. v. Amoco Oil Co., 211 F.R.D. 457, 477 (S.D. Fla. 2002).

The Eleventh Circuit has held that "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion." Mays v. United States Postal Serv., 122 F.3d 43, 46 (11th

Cir. 1997). "Denial of a motion to amend is 'especially soundly exercised when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage in the litigation.'" O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992) (quoting Lussier v. Dugger, 904 F.2d 661, 667 (11th Cir. 1990)).

## III. ANALYSIS

In a patent infringement action, a district court must approach a motion for summary judgment involving fact issues with "great care." Amhil Enters. v. Wawa, Inc., 81 F.3d 1554, 1557 (Fed. Cir. 1996) (citation omitted). However, summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Transclean Corp. v. Bridgewood Servs., 290 F.3d 1364, 1372-73 (Fed. Cir. 2002) (affirming summary judgment that a patent was not rendered invalid due to anticipation). A dispute about a material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party opposing a properly supported motion for summary judgment "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968)). "If the evidence [opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250 (citations omitted). "Summary judgment should be granted when, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Cmty.

10

Hosp., Inc., 373 F.3d 1151, 1154 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986)).

In this case, the Court finds that summary judgment was proper on the issues of
anticipation and obviousness because Plaintiffs supported their Motion for Summary
Judgment with affirmative evidence and Defendants did not point to specific facts in the
record to show that there were genuine issues for trial.  In addition, the Court will deny
Defendants' Motion to Reconsider, Alter or Amend because of Defendants' repeated
failures to explain the basis for, and identify evidence to support, their affirmative
defenses.

1.    **Anticipation and Obviousness**

In patent actions, a patent is presumed to be valid and the party challenging a
patent's validity has the burden of proving the invalidity by clear and convincing
evidence.  See 35 U.S.C. § 282; Central Admixture Pharmacy Services, Inc. v.
Advanced Cardiac Solutions, P. C., 482 F.3d 1347, 1357-58 (Fed. Cir. 2007) (citing
U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1564 (Fed. Cir. 1997)).  "Our
precedent holds that the presumption of validity afforded a U.S. patent by 35 U.S.C. §
282 requires that the party challenging validity prove the facts establishing invalidity by
clear and convincing evidence."  Verdegaal Bros., Inc., v. Union Oil Co. of Cal., 814
F.2d 628, 631 (Fed. Cir. 1987) (citations omitted).

"A prior art reference anticipates a patent claim if the reference discloses, either
expressly or inherently, all of the limitations of the claim."  Finnigan Corp. v.
International Trade Com'n, 180 F.3d 1354, 1365 (Fed. Cir. 1999); accord Continental
Can Co. v. Monsanto Co., 948 F.2d 1264, 1268 (Fed. Cir. 1991) ("Anticipation . . .
requires that the identical invention that is claimed was previously known to others and

thus is not new."). "Anticipation is a question of fact, including whether or not an element is inherent in the prior art." Eli Lilly & Co. v. Zenith Goldline Pharms., Inc., 471 F.3d 1369, 1375 (Fed. Cir. 2006).

In order to show that a claim is invalid due to obviousness, the challenger must prove that the differences between the invention and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Whether the invention was obvious under § 103 is to be determined by the following analysis:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17-18 (1966); see also KSR Intern. Co. v. Teleflex Inc., 550 U.S. 398, 406-07 (2007).

## 2.    Summary Judgment was Warranted in the First Instance

As discussed above, in opposing summary judgment, Defendants failed to identify to this Court specific items of prior art that allegedly render the '881 patent invalid. Defendants merely referred this Court to the IPONZ decision and pleadings submitted in another action, which included the Smithers Rapra Report [DE 45-3],[4] without any explanation or application to the '881 patent. Defendants' effort to support

---

[4]      The Smithers Rapra Report appears to be technical report prepared for the defendants in the related action discussing the invalidity of the International Patent W/O 01/00948 A1 for a "Shape Conforming Surface Covering" ("International Patent"). (See DE 45-3 at 24.)

its affirmative defenses of anticipation and obviousness was deficient for a number of reasons.

First, neither the IPONZ decision nor the Smithers Rapra Report deals with the '881 patent. The IPONZ decision concerns the New Zealand patent and the Smithers Rapra Report analyzes the International Patent. This is particularly significant because the aforementioned patents were the basis for the initial US patent application submitted by Flexiteek International, which was rejected by the PTO. It was not until Flexiteek International amended the US patent application and resubmitted it in September of 2004 that the PTO allowed a single claim to ultimately be embodied in the '881 patent.

Second, courts in the United States should exercise caution in according weight to a decision from a foreign patent office, which uses different procedures, standards and laws. See Heidelberger Druckmaschinen AG v. Hantscho Comm'l Prods., Inc., 21 F.3d 1068, 1072 (Fed. Cir. 1994). The IPONZ decision not only analyzes a different patent, but does so under a different set of laws than those applicable to the '881 patent. These factors diminish the probative value of the IPONZ decision. In addition, Defendants' attempts to demonstrate that their affirmative defenses of anticipation and obviousness created genuine issues for trial consisted primarily of arguing for a wholesale adoption of the conclusions reached in the IPONZ decision, rather than an independent analysis of the available prior art and the '881 patent. Accordingly, the Court had serious concerns of regarding the admissibility of the IPONZ decision under Rule 403 of the Federal Rules of Evidence. Evidence must be admissible at trial or capable of being presented in admissible form at trial to be considered on a motion for summary judgment. Fed. R. Civ. P. 56(e); Denney v. City of Albany, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001).

Third, Defendants did not submit an expert report analyzing the '881 patent and the available prior art. "What a prior art reference discloses or teaches is determined from the perspective of one of ordinary skill in the art." Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1361 (Fed. Cir. 2008). Further, "[w]hether a patent claim would have been obvious in light of prior art references is determined from the perspective of one of ordinary skill in the art." Id. Defendants submitted an expert report of Mark L. Weber entitled "Infringement Analysis," which focused on the issue of infringement and did not address Defendants' affirmative defenses of anticipation and obviousness. Moreover, the Court granted Plaintiffs' Motion in Limine [DE 92] and excluded testimony from Mr. Weber during the jury trial. In opposing that Motion, Defense counsel acknowledged that Mr. Weber was not "one of ordinary skill in the art."

Fourth, 35 U.S.C. § 282 provides that:

In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or . . . as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires.

35 U.S.C. § 282. On May 22, 2009, Plaintiffs filed a Motion in Limine [DE 92] in which they argued "[a]t this stage of the proceedings, the Plaintiff still does not know which prior art references the Defendants will be relying on to carry their burden of proof, by clear and convincing evidence," with respect to Defendants' affirmative defenses related to invalidity. (DE 92 at 14.) On June 9, 2009, Defendants responded to Plaintiffs' Motion in Limine and cited specifically to prior art referred to by the PTO and IPONZ, which Defendants intended to rely on in support of their affirmative defenses.

Due to the fact that the trial in this action began on June 15, 2009, the Court finds that Defendants failed to comply with 35 U.S.C. § 282.

Conversely, Plaintiffs set forth affirmative evidence to establish that the '881 patent was valid. Plaintiffs' submitted an expert report in which Plaintiffs' expert identifies 3 elements of the '881 patent that were not rendered invalid by the prior art available at the time the patent was issued, including prior art referenced in the IPONZ decision. The elements identified in the report are:

1. The underside surface has a longitudinal structure, which, in conjunction with the material of the invention, facilitates curved formations.
2. The side interconnections are configured or adapted to curve with the sheets or planks once joined.
3. The upper surface of the side interconnections are roughened or modeled to resemble caulking strips, rubber seams or the like, between planks of wood.

(DE 52-12 ¶¶ 44, 47-48.) Dr. Rhee found that the foregoing did not appear in any of the available prior art and, therefore, these are novel or inventive steps of the '881 patent, "and represent a significant improvement over the inventions of the prior art." (Id. ¶ 51.) "[T]he combination of the previously known elements . . . along with the novel or inventive steps, which significantly increased the applications of the invention to the purpose of synthetic teak decking for a boat was not obvious." (Id. ¶ 52.)

Plaintiffs also submitted the Declaration of Svein Abrahamsen that stated that "since the New Zealand patent was granted in September 23, 2002, there was a substantial change in the technology of synthetic teak decking products which made the claims in the New Zealand patent outdated." (DE 59-4 ¶ 10.) Finally, the Plaintiffs filed a chart and analysis to show that the prior art that appeared or was referenced by the IPONZ decision was "redundant" of the prior art that had either been disclosed to or discovered by the patent examiner of the US patent application. (DE 59-3 at 10-11.)

Therefore, the Court holds that in light of the record before it at the time, the

entry of summary judgment on the issues of anticipation and obviousness was not a "manifest error."

## 3. Defendants' Motion Provides an Insufficient Basis for this Court to Reconsider, Alter or Amend its Order

The Defendants' Motion to Reconsider, Alter or Amend cites to a number of prior art references in support of Defendants' affirmative defenses of anticipation and obviousness. (See DE 124 at 5-6.) As mentioned, Defendants' Response to Plaintiffs' Motion in Limine also cites several patents that purportedly render the '881 patent invalid. However, what is lacking is an explanation why such patents were not identified and discussed in response to Plaintiffs' Motion to Strike or Plaintiffs' Motion for Summary Judgment. See O'Neal, 958 F.2d at 1047 ("Denial of a motion to amend is especially soundly exercised when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage in the litigation.") (quotation omitted). Defendants also had a duty under 35 U.S.C. § 282 to give notice to Plaintiffs of the specific prior art references Defendants intended to rely on.

At a minimum, Defendants were aware of the IPONZ decision on March 30, 2009, (see DE 52-15), and had access to the documents Plaintiffs' expert reviewed as of April 30, 2009, when they took his deposition. (See DE 118 at 11.) Defendants' Response to Plaintiffs' Motion in Limine argues that Plaintiffs did not suffer any prejudice because Plaintiffs were aware of such documents and in fact their expert had reviewed them. The Court disagrees.

"The objective of section 282's provision for advance notice is to prevent unfair and prejudicial surprise by the production of unexpected and unprepared-for prior art references at trial." Eaton Corp. v. Appliance Valves Corp., 790 F.2d 874, 879 (Fed. Cir. 1986). "What counts is notice of intent to rely. Therefore, as a general rule, merely

16

mentioning a prior patent or publication in a pre-trial paper, and neglecting to indicate that it will be used at trial, does not normally constitute adequate notice." Id. at 879. Plaintiffs' expert cited at least 32 patents that he reviewed in addition to the IPONZ decision and the Smithers Rapra Report. (See Ex. B to DE 47.)  Plaintiffs' expert also submitted a report explaining his reasoning as to why the '881 patent was valid months before the trial.  The Court finds that to allow Defendants to remain silent until the eve of trial as to (1) the specific prior art references they intended to rely upon, and (2) their reasoning as to why such references render the '881 patent invalid would provide Defendants with an unfair advantage.  Cf. Eaton. 790 F.2d at 880 (affirming a district court's determination to allow in evidence of undisclosed prior art where the district court found "no prejudice whatsoever").

During the course of oral argument on June 16, 2009, Defense counsel asserted that Defendants could not fully address the issues of anticipation or obviousness until this Court conducted the claim construction on June 4, 2009.  However, the timing of the claim construction did not preclude Defendants from identifying and producing relevant prior art during the course of discovery.  Nor did it preclude Defendants from addressing the arguments and evidence Plaintiffs set forth on the record regarding the validity of the '881 patent.

Defendants also argue that § 282 "should be interpreted in light of the permissive nature of Fed. R. Civ. P. 26 regarding relevant evidence." (DE 118 at 9) (citing Eaton, 790 F.2d at 880).  However, the Court's decision is reinforced by the fact that not only did Defendants have an affirmative duty under § 282 to identify the prior art, but Plaintiffs filed two separate motions seeking such information.  In light of these circumstances, it is not enough for Defendants to argue that Plaintiffs were aware of the universe of documents upon which Defendants might introduce at trial.  ATD Corp. v.

Lydall, Inc., 159 F.3d 534, 551 (Fed. Cir. 1998) (affirming decision to exclude prior art where party "offered no reason to justify its submission long after the close of discovery"). Moreover, this Court informed the parties on May 8, 2009 that it expected "strict compliance with the Local Rules and the Rules of Federal Procedure going forward." (DE 77 at 2.)  Therefore, the Court will deny Defendants' Motion to Reconsider, Alter, or Amend.

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Reconsider, Alter or Amend Order Granting in Part Plaintiffs' Motion for Summary Judgment [DE 124] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this _3 RD_ day of July, 2009.

**JAMES I. COHN**
**United States District Judge**

Copies provided to:

Counsel of record via CM/ECF

18