UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-60996-CIV-COHN/SELTZER

FLEXITEEK AMERICAS, INC., a
Florida corporation, and FLEXITEEK
INTERNATIONAL AS, a foreign corporation,

    Plaintiffs,

v.

PLASTEAK, INC., an Ohio corporation,
PLASDECK, INC., an Ohio corporation, and
ANDRE BATISTA, an individual,

    Defendants.
_____/

## OMNIBUS ORDER ON POST-TRIAL MOTIONS

**THIS CAUSE** is before the Court on Defendants PlasTEAK, Inc. and PlasDECK, Inc.'s (together "Defendants") Renewed Motion for Judgment as a Matter of Law [DE 154] ("Rule 50(b) Motion"), Defendants' Motion for New Trial as to Liability [DE 159] ("Rule 59 Motion"), and Plaintiffs' Motion to Amend or Alter Final Judgment [DE 161] ("Motion for Permanent Injunction"). The Court has carefully considered all of the parties' submissions, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

This action was based on Plaintiffs' claim that Defendants sold or installed products that infringe on US Patent No. 6,895,881 ("the '881 Patent"). The subject matter of the '881 Patent is a synthetic teak decking product that is often used with marine vessels. The Plaintiffs consist of Flexiteek International AS ("Flexiteek International"), the entity that obtained the '881 Patent, and Flexiteek Americas, Inc. ("Flexiteek"), which is the United States subsidiary of Flexiteek International that

markets, sells and distributes the products embodied by the '881 Patent in the United States. PlasTEAK, Inc. and PlasDECK, Inc. are Ohio corporations which are also in the business of distributing a composite material resembling teak wood for use on boats. Mr. Batista is an individual who installed Defendants' products.

The parties engaged in a contentious discovery period. Both Plaintiffs' and Defendants' discovery and disclosure violations are evidenced by the record. See, e.g., DE's 53, 77, 89, 132, and 156. In this regard, the Court capped the potential damages Plaintiffs could receive and precluded Plaintiffs from arguing infringement under the doctrine of equivalents due to untimely disclosures.[1] In addition, the Court granted summary judgment in favor of Plaintiffs on the issues of anticipation and obviousness, in part, based on Defendants' repeated failures to set forth the basis of these affirmative defenses. See DE 156.

The Court held a jury trial in this case on June 15 through June 19, 2009. On June 19, 2009, the jury returned a verdict finding that Defendants' products literally infringe on '881 Patent. The jury awarded Plaintiffs $79,632.00 to be paid by Defendant PlasDECK, Inc. The jury also returned a verdict in favor of the Defendant Andre Batista and against the Plaintiffs on the claim that Mr. Batista installed products that infringed on the patent held by Plaintiffs. On June 19, 2009, the Court conducted a bench trial on the Defendants' affirmative defense that the '881 Patent was invalid due to inequitable conduct on the part of Plaintiffs. The Court entered an order on July 3,

---

[1] The Court did not instruct the jury on the doctrine of equivalents due to the Plaintiffs' failure to establish a sufficient basis in their initial expert report. See Malta v. Schulmerich Carillons, Inc., 952 F.2d 1320 (Fed. Cir. 1991) (holding that there must be substantial and particularized evidence to support the application of the doctrine of equivalents).

2009 holding that Plaintiffs failed to disclose material information to the United States Patent and Trademark Office ("PTO"), but Defendants failed to carry their burden to show Plaintiffs possessed an intent to deceive. The Court entered a Final Judgment on July 6, 2009.

Defendants filed the Rule 50(b) Motion on July 3, 2009. Defendants argue that the Court should enter judgment as a matter of law in favor of Defendants based on the following grounds: (1) no reasonable jury could find that Defendants' products infringe the '881 Patent; and (2) Plaintiffs did not present legally sufficient evidence upon which the jury could award damages in this case.

On July 15, 2009, Defendants filed the Rule 59 Motion. There, Defendants raise four arguments in support of their request for a new trial: (1) the jury's verdict is inconsistent; (2) the jury relied upon an impermissible basis in reaching its verdict; (3) the jury's verdict is against the weight of the evidence; and (4) the issue of patent invalidity should have been submitted to the jury.

Plaintiffs filed the Motion for Permanent Injunction pursuant to Rule 59 on July 17, 2009. Plaintiffs request a "permanent injunction enjoining [Defendants] from conducting activities that infringe on the '881 Patent." DE 161 at 2. The motion argues that Plaintiffs can satisfy the four elements required for the issuance of a permanent injunction.

## II. LEGAL STANDARDS

### 1. Rule 50(b) of the Federal Rules of Civil Procedure

Pursuant to Rule 50(b), a party may renew its motion for judgment as a matter of law after the jury has returned its verdict. <u>Optimum Technologies, Inc. v. Henkel</u>

Consumer Adhesives, Inc., 496 F.3d 1231, 1251 (11th Cir. 2007). In considering the evidence presented at trial, a court must draw all factual inferences and resolve all credibility determinations in the favor of the nonmoving party. See Munoz v. Oceanside Resorts, Inc., 223 F.3d 1340, 1344 (11th Cir. 2000). A Rule 50(b) motion should be granted only where "reasonable [jurors] could not arrive at a contrary verdict." Id. at 1344-45. Under Rule 50(b), a party is entitled to judgment as a matter of law "if during a trial by jury the opposing party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the opposing party on that issue." Wood v. Green, 323 F.3d 1309, 1312 (11th Cir. 2003).

"A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury." Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2617 n.5 (2008). "If a party asserts new grounds in its renewed motion for judgment as a matter of law that it did not assert in its initial motion for judgment as a matter of law, a court 'may not rely on the new grounds to set aside the jury's verdict.'" Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 717 n.3 (11th Cir. 2002) (quoting Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1289 (11th Cir. 1998)).

### 2. Rule 59 of the Federal Rules of Civil Procedure

"In some cases, the evidence might preclude judgment as a matter of law and yet lean so heavily in the other direction so as to justify a district judge in ordering a new trial." Sailor Inc. F/V v. City of Rockland, 428 F.3d 348, 353 (1st Cir. 2005) (citing 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2531 (2d ed. 1995); accord Nat'l Car Rental Sys. v. Better Monkey Grip Co., 511 F.2d 724, 730-31

(5th Cir. 1975), cert. denied, 423 U.S. 894, 96 S. Ct. 193, 46 L. Ed. 2d 126 (1975). Rule 59 of the Federal Rules of Civil Procedure states, in pertinent part, that a "court may, on motion, grant a new trial on all or some of the issues – and to any party – . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

"Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." Del Rio Dist. v. Adolph Coors Co., 589 F.2d 176, 179 n.3 (5th Cir. 1979) (quotation omitted); see also Shaps v. Provident Life & Accident Ins. Co., 244 F.3d 876, 885 (11th Cir. 2001) ("[A] new trial may be ordered only when the interests of substantial justice are at stake."). A Rule 59 motion may be granted when the "verdict is against the clear weight of the evidence, when the damages are excessive, or when the court determines the trial was not fair." Hall v. Norfolk Southern Railway Co., 829 F. Supp. 1571, 1579 (N.D. Ga. 1993) (citing National Car Rental System v. Better Monkey Grip Co., 511 F.2d 724 (5th Cir. 1975)). The Eleventh Circuit cautions that "[t]he trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow" and is limited to "protect[ing] against manifest injustice in the jury's verdict." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984). Similar to Rule 50(b), "a Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005).

## III. ANALYSIS

Given that the parties' post-judgment motions are related, the Court will address all three in a single Order. As discussed below, the Court will deny Defendants' Rule 50(b) Motion [DE 154] and Rule 59 Motion [DE 159] finding that the jury reached a fair and reasonable verdict based on the record evidence. In addition, the Court will grant Plaintiffs' Motion for Permanent Injunction [DE 161] because Plaintiffs have satisfied the prerequisites for injunctive relief.

1. **Defendants' Rule 50(b) Motion**

   A. **The Evidence Supported the Jury's Verdict**

Defendants argue that "there [was] insufficient evidence to support the jury's verdict." DE 154 at 3. Defendants correctly state that their Rule 50(b) Motion should be granted only if "'the facts and inferences point so strongly and overwhelmingly in favor of [Defendants] that the Court believes that reasonable men could not arrive at a'" verdict that Defendants' products infringe on the '881 Patent. Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting Watts v. Great Atl. & Pac. Tea Co., 842 F.2d 307, 309-10 (11th Cir. 1988) (per curiam). Defendants' Rule 50(b) Motion falls far short of this high burden.

The key factual question in this case centered on the underside of the Plaintiffs' and Defendants' products. The '881 Patent states that the synthetic planks "are formed with longitudinal slots at the underside thereof for facilitating forming of curved coverings and for acting as a base for a glue or adhesive." Defendants argued that their products did not infringe the '881 Patent because the bottom of their products were smooth and did not contain longitudinal slots. Plaintiffs argued that Defendants'

6

products, when examined closely, did contain longitudinal slots even though they were not as deep as the recesses found on the bottom of Plaintiffs' products. The jury resolved this question in favor of Plaintiffs. The Court finds that Plaintiffs presented sufficient evidence to support the jury's verdict including the text of the '881 Patent, expert testimony, samples of Plaintiffs' and Defendants' products, magnified photographs of such products, and several additional witnesses. Defendants relied primarily on the testimony of William Gribble, who is the president of the Defendant companies and a witness with an obvious interest in the case's outcome.

Defendants assert that the "longitudinal 'structures,' as opposed to 'slots,'" found on the bottom of Defendants' products "are a natural result of PVC extrusion, and can not factually support a claim of literal infringement." DE 154 at 2. Defendants made the same argument to the jury and it was rejected. The Court acknowledges that the question of whether Defendants' products contain "longitudinal slots" as defined in the '881 Patent is a close call. However, the Court finds that this is precisely the type of factual question appropriate for a jury. In addition, the Court finds that the jury's decision was reasonable and there is no basis to disturb the verdict.

Plaintiff's expert, Dr. Rhee, submitted an expert report wherein he set forth his opinion that Defendants' products literally infringed on the '881 Patent. See DE 50-2 ¶ 39 ("I have found, as a result of my review that each of the products of the Defendants that I have listed above have literally infringed upon the '881 Patent, or, in other words, each one of the listed products of the Defendants contains each and every element of the '881 Patent."). Defendants highlight a portion of Dr. Rhee's deposition testimony in which he states that the Defendants' products are "pretty much similar to Flexiteek

material." DE 154 at 2-3 (emphasis added). Defendants argue that the foregoing statement contradicts Dr. Rhee's claim of literal infringement. However, as mentioned above, the jury was not instructed on the doctrine of equivalents. Instead, the Court informed the jury that the "Plaintiffs must prove infringement by demonstrating that the Defendants' product literally infringes the claim contained in the patent. A product literally infringes a claim of a patent when it contains the combination of each and every element of the invention as defined by the particular patent claim." DE 142 at 12. Accordingly, the Court will not reverse the jury's determination on the issue of infringement.

### B.  The Evidence Supported the Damage Award

Plaintiffs sought damages on a theory of lost profits. In order to recover on this theory, a plaintiff must show a reasonable probability that "but for" the infringing activity, the patentee would have made the infringer's sales. Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1377 (Fed. Cir. 2003). "To show 'but for' causation, the patentee must reconstruct the market to determine what profits the patentee would have made had the market developed absent the infringing product." Id. Defendants argue that Plaintiffs presented insufficient evidence regarding damages because Plaintiffs did not conduct a proper market reconstruction. See DE 154 3-4. In particular, Defendants argue that Plaintiffs did not establish the two of the four Panduit factors. See Panduit Corp. v. Stahlin Brothers Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978).[2]

---

[2]  Panduit held that to recover on a lost profits theory, "a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made." 575 F.2d at 1156. Defendants argue that Plaintiffs failed to establish the first and third factors. DE 154 at 5.

The Court finds that there was sufficient evidence presented to the jury to establish a reasonable probability that "but for" Defendants' infringement, Plaintiffs would have made an additional $79,632.00. First, the Panduit test is a "useful, but non-exclusive, way for a patentee to prove entitlement to lost profits." Tate Access Floors v. Maxcess Techs., 222 F.3d 958, 971 (Fed. Cir. 2000). Second, this case involved a limited number of suppliers. In such cases, a full market reconstruction is not required. See Amstar Corp. v. Envirotech Corp., 823 F.2d 1538, 1543 (Fed. Cir. 1987) ("In a market with only two viable competitors, one may infer that the patentee would have made the infringer's sales or charged higher prices but for the infringing competition.").

Finally, Defendants' Rule 50(b) Motion takes issue with the theory of damages Plaintiffs presented at trial. Yet the jury also rejected Plaintiffs' theory which resulted in a damage award in the millions, far greater than the amount actually awarded. In fact, the jury returned a verdict close to the amount of damages suggested in closing by Defendants in the event the jury found in favor of Plaintiffs. Therefore, the Court will deny Defendants' Rule 50(b) Motion.

**2.  Defendants' Rule 59 Motion**

**A.  The Jury's Verdict is Not Fatally Inconsistent**

The jury returned a verdict that Defendants' products literally infringed on the claim contained in the '881 Patent, but the jury did not find that Andre Batista was liable for installing products which infringed the patent. Defendants argue that "[s]uch a finding is patently inconsistent and defective, and there is no rational, non-speculative way to reconcile these findings." DE 159 at 3. However, Defendants argued in closing

that although it was established that Mr. Batista installed Defendants' products, Plaintiff never established when such installations occurred. Accordingly, Defendants argued that Mr. Batista should not be found liable because there was no evidence that he installed Defendants' products after being made aware of the lawsuit, i.e., after being on notice that Defendants' products potentially infringed upon the '881 Patent.

In order to qualify as inconsistent, there must be "no rational, non-speculative way to reconcile . . . two essential jury findings." Higginbotham v. Ford Motor Co., 540 F.2d 762, 773 (5th Cir. 1976). "Answers should be considered inconsistent . . . only if there is no way to reconcile them." Willard v. Hayward, 577 F.2d 1009, 1011 (5th Cir. 1978); see also Witt v. Norfe, Inc., 725 F.2d 1277 (11th Cir. 1984). Defendants argue that "[b]ased on the authority of Witt, the Court should find the jury's verdict to be "defective." DE 159 at 3. In Witt, the court ruled that it was fatally inconsistent for a jury to find that a product was defective under a theory of negligence but that it was not defective under strict liability or breach of implied warranties theories. The jury's verdict here does not present the same problem found in Witt because the Defendants set forth a rational way to reconcile the jury's findings.

Alternatively, assuming that there is no way to reconcile the jury's decision, the Court finds that this issue does not warrant a new trial. See Shaps, 244 F.3d at 885 (11th Cir. 2001) ("[A] new trial may be ordered only when the interests of substantial justice are at stake."). As Plaintiffs acknowledged in closing arguments, Mr. Batista did not manufacture nor distribute the infringing products. Mr. Batista merely installed the products. Plaintiffs' damages did not occur during the installation, rather they occurred when a boat owner decided to purchase Defendants' products instead of

Plaintiffs' products.[3]

Moreover, it is Mr. Batista's own lawyer that is raising this argument. In other words, Plaintiffs are not asking for a new trial because they believe that they were unfairly denied damages to which they were entitled. Rather, Defendants likely raise this issue in an effort to seek a new trial on the issue of infringement instead of seeking to rectify an injustice involving Mr. Batista. This consideration further weighs in favor of denying Defendants' request for a new trial.

### B. The Jury's Verdict Did Not Rely on Impermissible Testimony

Defendants argue that "the jury's sole basis for finding infringement was the testimony of Dr. Rhee, a polymer chemist." DE 159 at 4. The Court rejects Defendants' argument because it is entirely speculative and at odds with the record in this case. While it is impossible to determine what evidence the jury based its verdict on, it is clear that Plaintiffs presented evidence in addition to the testimony of Dr. Rhee. Plaintiffs also submitted to the jury samples of Plaintiffs' and Defendants' products, magnified photographs of such products, and several additional witnesses. See DE 167 at 7-8. Further, with respect to expert witnesses, the Court advised the jury as follows: "Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion. The same as with any other witness, it is up to you to decide whether to rely upon it."

Defendants also argue that Dr. Rhee is "not a person of ordinary skill in the relevant art of the invention." DE 159 at 4. The deadline to file motions to exclude or limit expert testimony in this case was April 10, 2009. Plaintiffs disclosed Dr. Rhee as

---

[3] The Court also notes that the evidence demonstrated that Mr. Batista earned roughly $3,000.00 installing Defendants' products.

11

their expert on February 27, 2009. Defendants filed a Motion to Exclude Expert Witness Report and Testimony of C.K. Rhee [DE 47] on April 8, 2009. That motion argued to exclude testimony from Dr. Rhee due to Plaintiffs' disclosure violations and failure to provide dates for Dr. Rhee's deposition. It did not challenge Dr. Rhee's qualifications. On May 22, 2009, after taking Dr. Rhee's deposition, Defendants filed a Motion in Limine to Exclude Plaintiffs' Expert C.K. Rhee's Supplemental Report [DE 97]. The three-page moving brief only challenged Dr. Rhee's qualifications to the extent that he included legal opinions in his Supplemental Report. While Defendants did challenge whether Dr. Rhee was a "person having ordinary skill in the art" in reply, the Court finds it significant that Defendants' motion sought to exclude only Dr. Rhee's Supplemental Report, which was not admitted into evidence. Accordingly, the Court finds Defendants' untimely arguments regarding Dr. Rhee's qualifications contained in the Rule 59 Motion do not warrant a new trial.

### C. The Jury's Verdict Is Not Against the Clear Weight of the Evidence

Defendants argue that "there is insufficient evidence to support the jury's verdict" that the Defendants' products literally infringe the '881 Patent. DE 159 at 5. The Court has discussed herein the evidence admitted at trial and found that the jury's verdict was not against the weight of the evidence. Therefore, Defendants' Motion does not approach the high burden required to grant a new trial. As mentioned, a judge should grant a motion for a new trial when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Hewitt, 732 F.2d at 1556 (internal quotations and punctuation omitted). "Because it is critical that a judge does

not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence.'" Lipphardt, 267 F.3d at 1189 (quoting Hewitt, 732 F.2d at 1556)).

### D. Issues of Patent Invalidity Were Properly Decided by the Court

Defendants' argument that the issues of anticipation and obviousness should have been submitted to the jury is an attempt to take one last bite at the apple regarding these affirmative defenses. Defendants, however, "cannot use" their Rule 59 Motion "to relitigate old matters." Linet, 408 F.3d at 763 (affirming denial of plaintiff's motion to amend or alter final judgment where "motion was essentially a motion to reconsider the district court's prior summary judgment order"). Nevertheless, the Court will address the arguments raised in this section of Defendants' Rule 59 Motion.

Defendants assert that the Court "*sua sponte*" granted summary judgment on the issues of anticipation and obviousness. DE 159 at 5. This statement is inconsistent with the record. In Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, Plaintiffs stated that (1) "there is no disputed issue of fact on the issue of invalidity due to obviousness, and the Plaintiff is entitled to [ ] summary judgment," DE 52-13 at 14; and (2) "[a]s Defendants have made no effort to overcome the presumption of validity, the affirmative defenses of both anticipation and obviousness raise no genuine issues of law or fact." Id. at 15. The Court granted summary judgment on these issues in light of the "lack of evidence and argument set forth by Defendants." DE 112 at 5.

The Court's Corrected Order Denying Defendants' Motion to Reconsider, Alter or Amend [DE 156] discusses the affirmative evidence relied on by Plaintiffs in support

of their Motion for Summary Judgment. <u>See</u> DE 156 at 15. That Order also describes the Defendants' repeated failures to articulate the basis for and set forth evidence in support of the affirmative defenses of anticipation and obviousness. <u>See id.</u> at 13-15. The Federal Rules of Civil Procedure and 35 U.S.C. § 282 do not allow a party to keep a theory of the case hidden throughout discovery only to spring it upon the other side at trial. <u>ATD Corp. v. Lydall, Inc.</u>, 159 F.3d 534, 551 (Fed. Cir. 1998) ("The purpose of § 282, like that of the Federal Rules, is to prevent unfair and prejudicial surprise, not to facilitate last-minute production of evidence."); <u>see also</u> <u>Primos, Inc. v. Hunter's Specialties, Inc.</u>, 451 F.3d 841, 851 (Fed. Cir. 2006). This is particularly true here where Plaintiffs filed motions challenging Defendants' affirmative defenses, <u>see</u> DE's 38 and 52, and the parties were explicitly warned after multiple discovery disputes that the Court would "expect strict compliance with the Local Rules and the Rules of Federal Procedure going forward." DE 77 at 2. Accordingly, the Court's decision to grant summary judgment was in part based on the consideration that Plaintiffs should not be prejudiced, and Defendants should not gain a tactical advantage, as a result of Defendants' discovery violations.

Defendants' Rule 59 Motion also takes issue with the fact that Plaintiffs' expert report, which discussed the validity of the '881 Patent, was provided to the jury. Defendants argue that "the jury was given one side of the argument about anticipation and obviousness." DE 159 at 6. As Plaintiffs correctly point out, the fact that the jury was presented with Dr. Rhee's testimony regarding "validity is irrelevant since the jury was not asked to make any determinations regarding the issue." DE 167 at 9.

Finally, Defendants claim that because the Court considered evidence of the patent's validity in connection with the bench trial concerning Defendants' affirmative

14

defense of inequitable conduct, the same evidence should have been presented to the jury. See DE 159 at 6 ("If it was appropriate for the Court to consider the materiality of the IPONZ proceedings and the USPTO prosecution history, why not the jury?"). First, it was appropriate to consider evidence regarding the issue of inequitable conduct because Defendants were able to survive summary judgment on this issue. Second, "[i]nequitable conduct is an equitable defense to patent infringement most appropriately reserved for the court." Rothman v. Target Corp., 556 F.3d 1310, 1322 (Fed. Cir. 2009); see also Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1584 (Fed. Cir. 1995) (noting that "inequitable conduct is a matter for the trial judge, and not the jury"). Accordingly, the Court will deny Defendants' Rule 59 Motion.

3.  **Plaintiffs' Rule 59 Motion**

A permanent injunction does not automatically issue upon a finding of patent infringement. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392 (2006) ("Like the Patent Act, the Copyright Act provides that courts 'may' grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'") (quoting 17 U.S.C. § 502(a)).[4] Rather, under "well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." Id. at 391. A plaintiff must demonstrate that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4)

---

[4] The Patent Act provides that a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

the public interest would not be disserved by a permanent injunction. Id. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." Id.[5]

"The eBay Court specifically cautioned against the application of categorical rules, classifications and assumptions" in evaluating whether to grant injunctive relief. TruePosition Inc. v. Andrew Corp., 568 F.Supp.2d 500, 531 (D. Del. 2008). Nevertheless, "[c]ourts awarding permanent injunctions typically do so under circumstances where plaintiff practices its invention and is a direct market competitor. Plaintiffs are also frequently successful when their patented technology is at the core of its business, and/or where the market for the patented technology is volatile or still developing." Id.

Here, Plaintiffs face irreparable injury if Defendants are not enjoined from selling and distributing infringing products. First, there is a limited market and Plaintiffs and Defendants are direct competitors. Cf. Johns Hopkins Univ. v. Datascope Corp., 513 F.Supp.2d 578, 586 (D. Md. 2007), rev'd on other grounds, 543 F.3d 1342 (Fed. Cir. 2008) ("[Defendant's] product competes directly with the Plaintiffs' product. In fact, it is the only competition and thus, its sale reduces the Plaintiffs' market share. Continued sales by [Defendant] will irreparably harm the Plaintiffs."); Muniauction, Inc. v. Thomson Corp., 502 F.Supp.2d 477, 482 (W.D. Pa. 2007), rev'd in part and vacated in part on

---

[5] In a concurring opinion in eBay, Chief Justice Roberts states that "[f]rom at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases." eBay, 547 U.S. at 395 (Roberts, C.J., concurring). The Chief Justice goes on to state that the foregoing "is not surprising, given the difficulty of protecting a right to exclude through monetary remedies that allow an infringer to use an invention against the patentee's wishes – a difficulty that often implicates the first two factors of the traditional four-factor test." Id. (emphasis in original).

other grounds, 532 F.3d 1318 (Fed. Cir. 2008) ("Plaintiff and defendants are direct competitors in a two-supplier market. If plaintiff cannot prevent its only competitor's continued infringement of its patent, the patent is of little value."). Second, Plaintiffs' business is based solely on the product described in the '881 Patent. See TiVo, Inc. v. EchoStar, 446 F.Supp.2d 664, 670 (E.D. Tex. 2006) (stating that one of the grounds supporting a permanent injunction is that plaintiffs is a "relatively new company with only one primary product"), rev'd in part on other grounds, TiVo, Inc. v. EchoStar Communications Corp., 516 F.3d 1290 (Fed. Cir. 2008).

Plaintiffs have no adequate remedy at law because money damages alone could not adequately compensate Plaintiffs for the irreparable harm caused by Defendants' infringement. Plaintiffs face loss of market share and erosion of their brand name if Defendants continue to infringe the '881 Patent. "[I]njunctive relief operates to protect the interests of a patentee against future infringement, the market effects of which may not be fully compensable in the form of monetary damages." 800 Adept, Inc. v. Murex Securities, Ltd., 505 F.Supp.2d 1327, 1337-38 (M.D. Fla. 2007), rev'd in part and vacated in part on other grounds, 539 F.3d 1354 (Fed. Cir. 2008); accord Funai Elec. Co., Ltd. v. Daewoo Electronics Corp., 593 F.Supp.2d 1088 (N.D. Cal. 2009). The Court finds that there is a threat of future infringement if an injunction does not issue. Although Defendants suspended sales on their own website, Plaintiffs submitted evidence that a number of Defendants' distributors continue to advertise Defendants' products online. See DE 161-2. Moreover, in opposing Plaintiffs' Motion for Permanent Injunction, Defendants argued multiple times that they should not be enjoined from selling a "superior product." DE 162 at 7 ("The public interest is not served by preventing the sale of a superior product.") Plaintiffs engaged in litigation for over a

year to obtain a favorable judgment regarding Defendants' infringement. Enforcement of this judgment should not require Plaintiffs to initiate a subsequent infringement action.

The balance of hardships favors Plaintiffs because the burden placed on Defendants by an injunction would consist only of the cost of forgoing infringing conduct. While Plaintiffs face loss of market share and harm to reputation. Further, Plaintiffs spent considerable time and effort to obtain the '881 Patent and the legal rights attached to the patent should be readily enforceable.

Defendants point to the fact that they filed a request with the PTO for reexamination of the '881 Patent on July 15, 2009. Defendants also mention that they will be appealing the Court's judgments and note the "unusually high reversal rate[]" of patent trials. If there is a future ruling regarding the '881 Patent's validity, Defendants may present such a ruling to the Court to reevaluate the propriety of injunctive relief at such time. Nevertheless, as it stands now, the '881 Patent is valid and Defendants' products have been found to literally infringe upon the '881 Patent.

Further, a permanent injunction against infringement in this case would not harm the public interest. The Federal Circuit has recognized that the public interest is served by strong patent protection. See Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331, 1348 (Fed. Cir. 2006). Accordingly, the Court finds that Plaintiffs' Motion for Permanent Injunction satisfies the four required elements for injunctive relief.

Finally, in opposing the Motion for Permanent Injunction, Defendants submitted a press release prepared by the Plaintiffs that overstates the results of this action. See DE 162-4. In addition, the Court notes that Plaintiffs are involved in another litigation concerning the '881 Patent. Therefore, the Court finds that two additional issues bear

mentioning. First, the Court reiterates that the rulings in this action, including those regarding the issues of anticipation, obviousness and inequitable conduct, were based on the record before this Court. The Court cannot categorically say, one way or the other, whether a defendant in any future case may be able to establish the invalidity of the '881 Patent. Second, the preliminary injunction issued in this case will be consistent with the language of the '881 Patent and the factual determinations made by the jury. It will provide Plaintiffs with nothing more than the protection to which they are entitled by the '881 Patent.

## IV. CONCLUSION

In light of the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Renewed Motion for Judgment as a Matter of Law [DE 154] is **DENIED**.

2. Defendants' Motion for New Trial as to Liability [DE 159] that Defendants' Motion to Dismiss [DE 29] is **DENIED**.

3. Plaintiffs' Motion to Amend or Alter Final Judgment [DE 161] is **GRANTED**. Plaintiffs shall submit a Proposed Permanent Injunction by **September 21, 2009**. The parties are encouraged to reach agreement on the language of the Proposed Permanent Injunction. If the parties are unable to reach agreement, Defendants may file their objections by **September 25, 2009**. Plaintiffs shall respond to any objections by **September 28, 2009**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this __15th__ day of September, 2009.

*[signature]*

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF