UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-60996-CIV-COHN/SELTZER

FLEXITEEK AMERICAS, INC.,
et al.,

      Plaintiffs,

v.

PLASTEAK, INC., et al.,

      Defendants.
_____/

## ORDER STAYING EXECUTION OF JUDGMENT AND POST-JUDGMENT DISCOVERY AND TERMINATING PERMANENT INJUNCTION

**THIS CAUSE** is before the Court on Defendants' Amended Motion for Protective Order, Stay of Execution of Judgment and Termination of Permanent Injunction [DE 221] ("Motion"). The Court has considered the Motion, Plaintiffs' Opposition [DE 226], Defendants' Reply [DE 227], the parties' related submissions, the record in this case and is otherwise advised in the premises.

### I. BACKGROUND

This action is based on Plaintiffs' claim that Defendants sold products which infringe on US Patent No. 6,895,881 ("the '881 Patent"). The subject matter of the '881 Patent is a synthetic teak decking product that is often used with marine vessels. The Plaintiffs consist of Flexiteek International AS ("Flexiteek International"), the entity that obtained the '881 Patent, and Flexiteek Americas, Inc. ("Flexiteek"), which is the United States subsidiary of Flexiteek International that markets, sells and distributes the products embodied by the '881 Patent in the United States. PlasTEAK, Inc. and PlasDECK, Inc. (together, "Defendants") are Ohio

corporations which are also in the business of distributing a composite material resembling teak wood for use on boats.

Defendants raised several affirmative defenses, including that the patent was invalid due to anticipation, obviousness and inequitable conduct. Before trial, the Court granted summary judgment in favor of Plaintiffs on the issues of anticipation and obviousness. Specifically, the Court "granted summary judgment in favor of Plaintiffs on the issues of anticipation and obviousness, in part, based on Defendants' repeated failures to set forth the basis of these affirmative defenses." DE 174 at 2; see also DE 156 at 5-9. As explained in the Court's Omnibus Order on Post-Trial Motions, the Court's decision to grant summary judgment was in light of

> Defendants' repeated failures to articulate the basis for and set forth evidence in support of the affirmative defenses of anticipation and obviousness. The Federal Rules of Civil Procedure and 35 U.S.C. § 282 do not allow a party to keep a theory of the case hidden throughout discovery only to spring it upon the other side at trial. This is particularly true here where Plaintiffs filed motions challenging Defendants' affirmative defenses, see DE's 38 and 52, and the parties were explicitly warned after multiple discovery disputes that the Court would "expect strict compliance with the Local Rules and the Rules of Federal Procedure going forward." DE 77 at 2. Accordingly, the Court's decision to grant summary judgment was in part based on the consideration that Plaintiffs should not be prejudiced, and Defendants should not gain a tactical advantage, as a result of Defendants' discovery violations.

DE 174 at 14 (citations omitted).

The Court held a jury trial on the infringement issue on June 15 through June 19, 2009. The jury returned a verdict finding that Defendants' products literally infringe on '881 Patent. See DE 143. The jury awarded Plaintiffs $79,632.00 in damages to be paid by Defendant PlasDECK, Inc. Id.

On June 19, 2009, the Court conducted a bench trial on the Defendants' affirmative defense that the '881 Patent was invalid due to inequitable conduct on the

part of Plaintiffs. The Court entered an order on July 3, 2009 holding that Plaintiffs failed to disclose material information to the United States Patent and Trademark Office ("PTO"), but Defendants failed to carry their burden to show Plaintiffs possessed an intent to deceive. The Court entered a Final Judgment on July 6, 2009.

On February 5, 2010, the Court entered a Permanent Injunction enjoining Defendants from producing or selling any products that infringe on the '881 Patent. See DE 212. The Permanent Injunction stated that "[u]pon any decision by a court or the United States Patent and Trademark Office that renders the '881 Patent invalid or unenforceable, PlasTEAK or PlasDECK may petition this Court to terminate this Permanent Injunction." Id. ¶ 5.

On February 9, 2010, Defendants filed their initial Motion for Protective Order and Stay of Execution of Judgment, and for Termination of Permanent Injunction [DE 213]. Therein, Defendants complained of Plaintiffs' discovery requests in connection with executing the judgment. In addition, Defendants argued that the Permanent Injunction should be stayed or terminated because the PTO "issued its 'Office Action in Ex Parte Reexamination,' rejecting Claim 1 (the sole claim) of the '881 patent under both 35 U.S.C. § 102 (anticipation) and 35 U.S.C. § 103 (obviousness)." DE 213 at 5. On March 29, 2010, Defendants filed the instant Motion which included additional discovery requests to which Defendants object.

On June 21, 2010, Defendants filed a Notice of Filing USPTO Advisory Action Dated June 3, 2010 [DE 10] ("Notice"). The Notice attached a document entitled "Ex Parte Reexamination Action," which was mailed by the PTO on June 4, 2010 ("Advisory Action"). The Advisory Action explains that the response Plaintiffs filed

3

with the PTO failed to overcome all of the rejections contained in the PTO's final rejection of the '881 Patent, which was mailed on April 23, 2010. See DE 228-1.

On June 22, 2010, the Court entered an Order Directing Parties to File Joint Status Report [DE 229] which instructed the parties to file a report discussing "how the USPTO Advisory Action impacts" the instant Motion. DE 229 at 1. On June 30, 2010, the parties filed a Joint Status Report that explains that the parties "are diametrically opposed as to the import of the USPTO Advisory Action." DE 230 at 2. In short, Defendants argue that the Advisory Action requires a termination of the Permanent Injunction and a stay of the execution of the Final Judgment. Plaintiffs argue that because "Plaintiffs have additional challenges, the 6.4.2010 Office Action cannot operate as a final adjudication." DE 230 at 2. Accordingly, Plaintiffs contend that termination of the Permanent Injunction may result in irreparable harm to the Plaintiffs.

## II. ANALYSIS

### 1. The Reexamination Procedure

Any individual may petition the PTO to reexamine a patent to ascertain whether prior art raises a substantial new question of patentability. 35 U.S.C. § 302; see also Everything For Love.com, Inc. v. Tender Loving Things, Inc., 2006 WL 2091706, at *2 (D. Ariz. July 21, 2006) ("Reexamination is a procedure, added in 1980, to provide a means whereby a patentee, or any member of the public, may ascertain whether a substantial new question of patentability can be raised against an issued patent on the basis of documentary prior art.") (citation omitted).[1] "Congress intended

---

[1] The PTO may also initiate a reexamination proceeding on its own motion if it determines that prior art patents or printed publications raise a substantial new question of patentability. 35 U.S.C. §§ 303-04.

reexaminations to provide an important 'quality check' on patents that would allow the government to remove defective and erroneously granted patents." In re Swanson, 540 F.3d 1368, 1375 (Fed. Cir. 2008) (citations omitted).

If the PTO determines that a substantial new question of patentability exists, the request for reexamination will be granted and the patent holder is notified of the process. See 35 U.S.C. § 304. The patent owner is permitted to argue why the patent should be upheld. In addition, the patent owner may amend or add claims to distinguish the patent from prior art, or the patent owner may cancel claims determined to be unpatentable. See 35 U.S.C. § 305.

Once reexamination is complete, the patent owner can appeal the PTO's decision to cancel or amend any claims by filing an appeal with the Board of Patent Appeals and Interferences and then, if necessary, with the Court of Appeals for the Federal Circuit. See 35 U.S.C. § 306. Once all appeals have been exhausted, or the time for appeal has run, "the Director will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307(a).

Here, Defendants filed a request for an *ex parte* reexamination on August 26, 2009. On or about November 3, 2009, the PTO determined that there was a substantial new question of patentability affecting claim 1 of the '881 Patent and thus Defendants' request was granted. See DE 201-3. Accordingly, the PTO set deadlines for the patent owner to file a statement and the requesters to file a reply, both of which were optional. Id.

On or about January 29, 2010, the PTO rejected claim 1 of the '881 Patent

5

under both anticipation and obviousness. See DE 213-3. The PTO's notice regarding this action indicates that the PTO did not receive a statement on behalf of the patent owner. Id. On March 29, 2010, the patent owner submitted a communication in response to the PTO's rejection of claim 1 of the '881 Patent. On April 23, 2010 after considering the patent owner's arguments, the PTO mailed a final action rejecting the '881 Patent due to anticipation and obviousness. See DE 227-1.

Thereafter, the patent owner sought to have the PTO reconsider its decision. On June 4, 2010, the PTO mailed the Advisory Action which indicates that the patent owner's proposed response "FAILS TO OVERCOME ALL OF THE REJECTIONS IN THE FINAL REJECTION MAILED 23 April 2010." DE 228-1. The Advisory Action goes on to state the following

> Unless a timely appeal is filed, or other appropriate action by the patent owner is taken to overcome all of the outstanding rejection(s), this prosecution of the present *ex parte* reexamination proceeding WILL BE TERMINATED and a Notice of Intent to Issue *Ex Parte* Reexamination Certificate will be mailed in due course. Any finally rejected claims, or claims objected to, will be CANCELLED.

Id.

## 2.   Impact on Permanent Injunction

Defendants argue that the "Court should either stay or terminate the Permanent Injunction as a result of the USPTO's decision that the '881 Patent is invalid." DE 221 at 5. As mentioned, Plaintiffs take the position that because "Plaintiffs have additional challenges, the 6.4.2010 Office Action cannot operate as a final adjudication." DE 230 at 2. In support of this statement, Plaintiffs argue the following:

> Point 1 of the Office Action specifically states that Claim 1 of United States Patent Number 6,895,881 (the "'881 Patent") will be cancelled unless the action of the Examiner is timely appealed. An appeal of the Office Action and opinion of the Examiner was timely appealed to the USPTO Board of Appeals on June 23, 2010. Thus, on its face, the Office Action cannot represent a final cancellation or adjudication of the '881 Patent. If the appeal to the Board of Appeals in unavailing, the patent holders have an additional remedy of an appeal to the Federal Circuit.

Id. at 2 n.1.

The Federal Circuit has recently discussed the interplay between decisions by federal courts and the PTO regarding a patent's validity. See In re Swanson, 540 F.3d 1368 (Fed. Cir. 2008). In the Swanson decision, the Federal Circuit addresses a patent owner's appeal of the PTO's determination that a patent was invalid. Approximately five years earlier, the Federal Circuit had affirmed a jury's determination that the same patent was not invalid. Id. at 1373. Following that appeal, an *ex parte* reexamination of the patent was initiated which ultimately resulted in a finding by the PTO that the patent was invalid. Id. at 1373-74.

The Federal Circuit stated that the "district court and this court did consider the precise question at issue on reexamination" and "both courts upheld the validity of the '484 patent in light of [the prior art]." In re Swanson, 540 F.3d at 1376. Nevertheless, the Circuit Court found that "the statutory language, legislative history, and different purposes underlying reexamination and federal court proceedings suggest that the determination of a substantial new question is unaffected by these court decisions." Id. "To hold otherwise would allow a civil litigant's failure to overcome the statutory presumption of validity to thwart Congress' purpose of allowing for a reexamination procedure to correct examiner errors, without which the presumption of validity never would have arisen." Id. at 1378.

In Swanson the Federal Circuit stated the following:

> In civil litigation, a challenger who attacks the validity of patent claims must overcome the presumption of validity with clear and convincing evidence that the patent is invalid. 35 U.S.C. § 282. If this statutory burden is not met, "[c]ourts do not find patents 'valid,' only that the patent challenger did not carry the 'burden of establishing invalidity in the particular case before the court.'" Ethicon, 849 F.2d at n.3 (internal citations omitted) (emphasis in original). Therefore, "a prior holding of validity is not necessarily inconsistent with a subsequent holding of invalidity," Stevenson v. Sears Roebuck & Co., 713 F.2d 705, 710 (Fed. Cir. 1983), and is not binding on subsequent litigation or PTO reexaminations. See Ethicon, 849 F.2d at 1429 & n.3 (rejecting the PTO's argument that it was bound by a court's decision upholding a patent's validity); Mendenhall v. Cedarapids, 5 F.3d 1557, 1569-70 (Fed. Cir. 1993) ("A prior decision that a patent has previously survived an attack on its validity serves only to inform the district court . . . ."); cf. In re Trans Texas Holdings Corp., 498 F.3d 1290, 1296-97 (Fed. Cir. 2007) (holding that the PTO during reexamination is not bound by a district court's claim construction).

Id. at 1377. After articulating the different standards employed by the PTO, the court concluded that "considering an issue at the district court is not equivalent to the PTO having the opportunity to consider it." Id. at 1378 (citing Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1427 (Fed. Cir. 1988) ("[P]recise duplication of effort does not occur because the PTO and the courts employ different standards of proof when considering validity . . . .")). In Ethicon, the Federal Circuit found that "if the district court determines a patent is not invalid, the PTO should continue its reexamination because, of course, the two forums have different standards of proof for determining invalidity." Ethicon, 849 F.2d at 1428-29.[2]

The Swanson decision articulates the difference between a defendant in a

---

[2] In Swanson, the Federal Circuit expressly rejected the patent owner's argument that "allowing an executive agency to find patent claims invalid after an Article III court has upheld their validity--violates the constitutionally mandated separation of powers, and therefore must be avoided." 540 F.3d at 1378. The court found that no Article III issue was created because "the court's final judgment and the examiner's rejection are not duplicative--they are differing proceedings with different evidentiary standards for validity." Id. at 1379.

civil case failing to meet its burden to demonstrate that a patent is invalid versus a determination by the PTO that a patent is invalid. This distinction carries even greater weight in the case before this Court because summary judgment on the issues of anticipation and obviousness was granted "in part, based on Defendants' repeated failures to set forth the basis of these affirmative defenses." DE 174 at 2. Unlike Swanson, where a jury determined the patent to be valid after a trial, here the Court's decision to grant summary judgment was based on a number of disclosure violations committed by Defendants in the lead up to trial. See, e.g., DE 156 at 5-9.[3] In fact, during the reexamination, Plaintiffs raised this Court's decision to the PTO. The Advisory Actions states the following: "In the 24 May 2010 response Patent owner argues that claim 1 was held to be valid during litigation. This argument is not persuasive because the determination of patentability by the USPTO is distinct . . . from the determination of validity by the courts." DE 228-1.

Moreover, in Everything For Love.com, the court found that "[t]he PTO is considered to have expertise in deciding issues of patentability and is in a better position to evaluate the validity of the [patent at issue]." Everything For Love.com, 2006 WL 2091706, at *4 (granting a stay of a patent infringement trial to allow the PTO to conduct a reexamination of the validity of the patent at issue). Therefore, the Court finds that the PTO's Advisory Action is not only the most recent decision regarding the '881 Patent's validity, it is a decision made after a thorough

---

[3] In the order granting Plaintiffs' request for a permanent injunction, the Court explicitly stated that "[t]he rulings in this action, including those regarding the issues of anticipation, obviousness and inequitable conduct, were based on the record before this Court. The Court cannot categorically say, one way or the other, whether a defendant in any future case may be able to establish the invalidity of the '881 Patent." DE 174 at 19.

examination of the matter conducted by a body which holds particular expertise in such issues. Accordingly, the Court finds that the PTO's determination should control and the Court will terminate the Permanent Injunction.

Plaintiffs raise several arguments as to why the Permanent Injunction should stand. First, Plaintiffs argue that "the appellate process of the USPTO Office Action could literally take years." DE 230 at 3. Plaintiffs assert that if the Court terminates the Permanent Injunction it will leave the Plaintiffs "vulnerable to years of unfair competition by the Defendants." Id. at 7. Plaintiffs' argument depends on the assumption that Plaintiffs will ultimately succeed in their appeal of the PTO's decision. If the Plaintiffs are not successful, however, the Defendants could have their business impaired for years by an invalid patent if the Permanent Injunction is not terminated. Indeed, it is far more difficult to determine how much money Defendants could have made if the Permanent Injunction stands and the PTO's decision is upheld, as opposed to the amount of damages suffered by Plaintiff if the Permanent Injunction is terminated and the PTO's decision is reversed.

In addition, Plaintiffs argue that even if the Advisory Action is treated as a final adjudication, the Federal Circuit "has strongly suggested Constitutional violations arise if the opinion of the USPTO, which is an arm of the executive branch, can be used to challenge, overturn or vacate a final judgment on a patent infringement matter that has already been entered in a Federal District Court." Id. at 2-3 (citing Swanson, 540 F.3d at 1379 n.5). Plaintiffs are correct that the Federal Circuit stated that "an attempt to reopen a final federal court judgment of infringement on the basis of a reexamination finding of invalidity might raise constitutional problems." Id. Defendants' Motion, however, focuses on the Permanent Injunction rather than the

Final Judgment which is subject to a pending appeal. Accordingly, there are no constitutional concerns.

### 3. Potential for Plaintiffs to Amend the '881 Patent

As discussed, it is possible for a patent owner to amend or add claims to distinguish the patent from prior art during the reexamination procedure. "[W]hen the reexamined or reissued claims are identical to those of the original patent, they shall 'have effect continuously from the date of the original patent.'" Bloom Eng'g Co. v. North Am. Mfg. Co., 129 F.3d 1247, 1250 (Fed. Cir. 1997) (quoting 35 U.S.C. § 252). "Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate. 'Identical' does not mean verbatim, but means at most without substantive change." Bloom, 129 F.3d at 1250. In this regard, Plaintiffs argue the following:

> It appears, after some minor changes are made to the language being used, that [Flexiteek International] is going to receive a Certificate of Reissue with 28 new or amended claims to the '881 Patent. If this Court has asked the parties to comment upon the potential cancellation Claim 1 of the '881 Patent, it must also consider comments upon the issue of 28 additional or amend claims. The Plaintiffs take the position the language on reissue will be substantially identical to the '881 Patent prior to the reexamination, which will not change the scope of the '881 Patent one bit.

DE 230 at 5. The Plaintiffs contend "that even if, following all available appeals, Claim 1 of the '881 Patent is invalidated, the Defendants will still have infringed that patent under the reissued claims, which will be retroactive. Under such conditions, there should be no stay of any of the previous orders entered by this Court." Id. at 6. Conversely, Defendants argue that "[i]n order for the amended claims to be granted, they must contain additional elements, not originally found in Claim 1, that narrow the claim. Therefore, any amended claim that is granted will have additional elements

that were not defined by the Court and were not tried before the jury." DE 230 at 12-13 (emphasis in original).

The Court finds that the arguments set forth above are speculative. The current circumstances before this Court are that Defendants' actions are being restrained by a patent which has been declared invalid by the PTO. Accordingly, the Court will not entertain arguments now based on what the parties believe the future may hold. Should the circumstances change in the future, the Plaintiffs make seek relief on the basis of such facts. Defendants are aware of the reexamination proceedings as well as the proposed amendments. The Court concludes that the PTO's proceedings should govern Defendants' actions rather than the Court's Permanent Injunction which is based on a patent which has been declared invalid.

### 4. Additional Matters

In light of the PTO's decision regarding the '881 Patent and the fact that the judgment in this matter on appeal to the Federal Circuit, the Court finds that it is prudent to stay all post-judgment discovery related to execution of the judgment. Similarly, the Court will deny without prejudice Plaintiffs' Motion for Bill of Costs [DE 183] and Plaintiffs' Verified Motion for Attorneys' Fees and Costs [DE 184]. Once the Federal Circuit rules on the pending appeal, Plaintiffs may (1) renew their motions for fees and costs by filing a memorandum of law discussing how the Federal Circuit's decision impacts the analysis of the "prevailing party" in this matter, and (2) seek to lift the stay imposed by this Order.

### III. CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Amended Motion for Protective Order, Stay of Execution of Judgment and Termination of Permanent Injunction [DE 221] is **GRANTED**. Execution on the judgment and all post-judgment discovery is stayed and the Permanent Injunction [DE 212] is terminated.

2. Plaintiffs' Motion for Bill of Costs [DE 183] and Plaintiffs' Verified Motion for Attorneys' Fees and Costs [DE 184] are **DENIED without prejudice**. Plaintiffs may renew these motions once a decision on the pending appeal is rendered by the Federal Circuit.

3. Defendants' Motion for Protective Order, Stay of Execution of Judgment and Termination of Permanent Injunction [DE 213] is **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 20th day of July, 2010.

/s/ James I. Cohn
JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of record