## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-60996-CIV-COHN/SELTZER

FLEXITEEK AMERICAS, INC.,
et al.,

    Plaintiffs,

v.

PLASTEAK, INC., et al.,

    Defendants.

_____/

### REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendants PlasTEAK, Inc. and PlasDECK, Inc.'s Renewed Motion for Relief from Judgment ("Renewed Motion"). (DE 287). Pursuant to 28 U.S.C. § 636 and the Local Rules of the United States District Court for the Southern District of Florida, Defendants' (initial) Motion for Relief from Judgment (DE 279) and all motions that relate directly thereto, including the Renewed Motion, were referred to the undersigned Magistrate Judge. (DE 280). Having carefully considered the papers in support of (DE 287, 288, 294) and in opposition to (DE 292) the Renewed Motion, having heard argument of counsel (DE 295), and being otherwise fully advised, the undersigned RECOMMENDS that the Renewed Motion (DE 287) be GRANTED.

### I.  BACKGROUND

The procedural history giving rise to the Renewed Motion is complex, involving overlapping administrative and judicial proceedings, both on initial consideration and on appellate review. For ease of reference, the detailed recitation of the procedural history is followed by a chart summarizing only the procedural highlights.

A.     New Zealand Patent Proceedings

On February 3, 2003, the Intellectual Property Office of New Zealand ("IPONZ") granted Patent No. 516110 to Plaintiff Flexiteek (with Derek Whitaker named as the inventor). (DE 49 at 7 and Ex. 1). The New Zealand patent mirrored the original U.S. application that led to the United States Patent and Trademark Office ("PTO") issuing the '881 Patent, the patent at issue in this case. (DE 155 at 13). On July 4, 2003, the New Zealand patent became subject to a revocation challenge. Plaintiff Flexiteek filed a counterstatement in opposition to the revocation challenge, specifically addressing the Kemerer prior art reference raised in that proceeding. (DE 124-7 at 5, ¶ 7). On April 18, 2005, IPONZ revoked Patent No. 516110, inter alia, for "prior publication" (the New Zealand equivalent of "anticipation") based on the prior art, including the Kemerer patent (U.S. Patent No. 4,290,248). (DE 49 at 7 and Ex. 2).

B.     United States Patent Proceedings

On December 18, 2001, Plaintiff Flexiteek first filed a U.S. patent application; it was not accepted for filing until August 5, 2003, that is, one month after the New Zealand patent had become subject to a revocation challenge. (DE 155 at 6). On May 25, 2005, approximately five weeks after the New Zealand patent had been revoked, in part, due to the Kemerer prior art, the U.S. application issued as United States Patent 6,895,881 ("the '881 Patent") (DE 155 at 8). The '881 Patent contained a single claim – Claim 1 – and its subject matter was a synthetic teak decking product that is often used with marine vessels. Flexiteek Americas, Inc. and Flexiteek International, AS ("Plaintiffs") own all rights appurtenant and attendant to the '881 Patent. Not at any time during the patent prosecution, nor at any time thereafter, did Plaintiffs disclose to the PTO the New Zealand

2

revocation proceedings, the New Zealand decision, or any of the prior art cited therein. (DE 155 at 8).

C.      The Complaint for Infringement (Case No. 08-60996-Civ-Cohn/Seltzer)

On June 30, 2008, Plaintiffs initiated this action (Case No. 08-60996-Civ-Cohn/Seltzer), by filing a Complaint for infringement against PlasTEAK, Inc. and PlasDECK, Inc. ("Defendants"). (DE 1). Defendants are Ohio corporations in the business of distributing a composite material resembling teak wood for use on boats. Plaintiffs alleged that Defendants sold or installed products that infringe their '881 Patent; they sought damages and injunctive relief. (DE 1). Defendants answered and raised an invalidity defense based, inter alia, on a theory of anticipation.[1] (DE 8).

D.      Pre-Trial Discovery and the Exclusion of the Prior Art

In January 2009, during the course of pretrial discovery, Plaintiffs responded to interrogatories propounded by Defendants. The interrogatories asked Plaintiffs to "[i]dentify each patent application filed in a foreign country which corresponds to the '881 patent," to "state the current status of the application or patent," and to "identify all art cited by the foreign patent office." (DE 29 at 16-17). Plaintiffs identified New Zealand Patent No. 516110 as a patent that corresponded to the '881 Patent, and they disclosed that the New

---

[1] In pertinent part, the statute governing the defense an anticipation provides: "A person shall be entitled to a patent unless - - (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, . . . ." 35 U.S.C. § 102. The Federal Circuit has stated that "the statute embodies the concept of novelty – if a device or process has been previously invented (and disclosed to the public), then it is not new, and therefore the claimed invention is 'anticipated' by the prior invention. . . . [T]o demonstrate anticipation, the proponent must show that the four corners of a single, prior art document describe every element of the claimed invention." Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1369 (Fed. Cir. 2008) (internal quotations omitted).

3

Zealand Patent had been revoked; yet, Plaintiffs also represented that they were "without knowledge" of any art cited by the New Zealand patent office. (DE 29 at 16-17). According to Defendants, only through an unrelated case did they later learn of the (Kemerer) prior art.[2]

On May 22, 2009, Plaintiffs filed a Motion in Limine to exclude from evidence the prior art cited in the IPONZ decision. (DE 92). Plaintiffs argued that Defendants had not identified the specific prior art upon which they would be relying in support of their affirmative defenses at trial and that this failure "ha[d] impaired, to the prejudice of the Plaintiffs, the ability of the Plaintiffs and their expert to prepare for trial." (DE 92 at 13-14). And in court, Plaintiffs' counsel argued against allowing use of the IPONZ prior art on the ground that he had never seen the particular items of prior art until just a few days before trial;[3] he further represented that he did not know if his client had the prior art documents,

---

[2] On March 30, 2009, Defendants supplemented their initial discovery disclosures and informed Plaintiffs that in support of their affirmative defenses they intended to rely on two docket entries (Nos. 33 and 41) and related attachments filed on February 23, 2009, and on March 18, 2009, in Case No. 08-60995-Civ-Dimitrouleas/Snow. (DE 52-14 at 3). Included in those attachments is the IPONZ decision, in which that patent office had found that Kemerer "prior publishes" claims of Flexiteek's New Zealand patent. (DE 33-2 at 9; Case No. 08-60995-Civ-Dimitrouleas/Snow).

[3] Defendants argue that the time records of Plaintiffs' counsel in this case (attached to Plaintiffs' Verified Motion for Attorneys' Fees and Costs (DE 184-1)) "call into question" their purported unfamiliarity with the (Kemerer) prior art. (DE 294 at 4). Those records contain the following time entries for dates that precede both Plaintiffs' (January 2009) interrogatory response and their (June 2009) verbal representation to the Court: September 29, 2008 – "Receipt and Review of IPONZ Opinion fro [sic.] New Zeland [sic.]/Factual-Legal Patent Research re: Prior Art/Office Conference with Allen Bennett re: Validity Argument"; October 9, 2008 – "Receipt and Review of Additional Documents regarding the revocation case in New Zealand"; and October 21, 2008 – "Receipt and Review of NZ Patent/NZ Patent Infringement Case." (DE 184-1 at 16, 17). In addition, the records contain entries for dates shortly following Plaintiffs' interrogatory response and, again, preceding counsel's verbal representation to the Court: February 12, 2009 –

as he had received only the IPONZ decision from the client. (Transcript, June 19, 2009, at 793, lines 6-9, and at 796, lines 5-14). On June 5, 2009, the District Court granted summary judgment in favor of Plaintiffs on the defense of anticipation, finding that "Defendants simply have not described the prior art in any degree that would allow this Court to determine that this analysis renders the '881 patent invalid." (DE 112 at 4-6). The Court later explained that its summary judgment order had been premised on procedural grounds – "a number of disclosure violations committed by Defendants in the lead up to trial" and "Defendants' repeated failures to set forth the basis of these affirmative defenses." (DE 231 at 9; DE 174 at 2). On June 14, 2009, Defendants moved the Court to reconsider its grant of summary judgment (DE 124); the Court denied the motion due to Defendants' failure to comply with the thirty-day notice requirement of 35 U.S.C. § 282. (DE 156 at 15).[4]

## E.     The Trial, Post-Trial Rulings, and the Appeal

The Court held a jury trial in this matter from June 15 to June 19, 2009. As a result of the previous grant of summary judgment, Defendants' anticipation defense was not presented to the jury. On June 19, 2009, the jury returned a verdict in Plaintiffs' favor,

---

"Research Prior Art for Expert review"; and March 13, 2009 – "Research IPONZ citations." (DE 184-1 at 26, 32).

[4] The law requires that notice of the evidence to be relied upon to establish the affirmative defenses of anticipation and obviousness be provided to an opposing party at least thirty days before trial. 35 U.S.C. § 282. Although Defendants had disclosed that they would rely upon the April 18, 2005 IPONZ decision revoking Plaintiffs' New Zealand patent, Defendants did not identify with particularity the prior art that rendered the '881 Patent invalid. (DE 156 at 12). The Court found that Defendants had violated the statute by waiting until five days before trial to identify the specific art on which they intended to rely to support their affirmative defenses. (DE 156 at 14).

5

finding that Defendants had literally infringed Claim 1, the sole claim of the '881 Patent, and awarding Plaintiffs damages of $79,632. (DE 143).

On that same date, the Court conducted a bench trial on Defendants' affirmative defense of inequitable conduct on the part of Plaintiffs. On July 3, 2009, the District Court issued Findings of Fact and Conclusions of Law re: Defendants' Affirmative Defense of Inequitable Conduct (DE 155), concluding that Defendants had failed to meet their burden to establish inequitable conduct. More specifically, the Court found that although Defendants had established that the IPONZ decision and the prior art referenced therein were material, Defendants were not able to establish by "clear and convincing evidence" that Plaintiffs had intended to deceive the PTO. (DE 155 at 13-14). The Court based its finding largely on the testimony of Plaintiff Flexiteek's President and CEO. He had provided a declaration and testified that he had relied heavily on the advice of the company's Swedish patent counsel that any prior art that appeared in the IPONZ decision was redundant of the prior art that had either been disclosed during the patent prosecution or discovered by the PTO; he also testified to his belief that the technology in the '881 patent had improved over the years and was different. (DE 155 at 13). The District Court noted that the "clear and convincing" standard of proof was "critical to [its] determination," and it further noted that if the burden were "simply a preponderance of the evidence, this case would present a far more difficult question." (DE 155 at 14). Also on July 3, 2009, the Court entered a Final Judgment upon the jury's June 19, 2009 verdict and upon the Court's Findings of Fact and Conclusions of Law re: Defendants' Affirmative Defense of Inequitable Conduct. (DE 158).

On July 31, 2009, Defendants appealed the Final Judgment to the Federal Circuit.

6

(DE 163). On February 5, 2010, the District Court issued a Permanent Injunction, enjoining Defendants from infringing the '881 Patent, yet allowing Defendants to petition the Court to terminate the Injunction "[u]pon any decision by a court or the [PTO] that renders the '881 Patent invalid or unenforceable"; the Court later terminated the injunction after the PTO had invalidated the patent. (DE 212 at 2; DE 231). On March 5, 2010, Defendants appealed the Permanent Injunction to the Federal Circuit. (DE 217).

F.     The PTO's Reexamination Proceedings and the District Court's Response

On July 20, 2009 – more specifically, after the District Court had entered the Final Judgment, but before Defendants had filed their appeal – Defendants initiated an ex parte reexamination of the '881 Patent before the PTO, citing, in part, the Kemerer prior art reference. (DE 288-2). On or about November 3, 2009, the PTO determined that an issue of patentability had been presented, and it set deadlines for Plaintiffs to file a statement and for Defendants to file a reply. (DE 201-3).   On or about April 21, 2010, having considered Plaintiffs' arguments, the PTO Examiner rejected Claim 1 of the '881 Patent, finding it invalid, inter alia, as anticipated by the (Kemerer) prior art; the same art had been cited seven years earlier in the IPONZ revocation. (DE 227-1 at 12).

Plaintiffs asked the PTO to reconsider the rejection.  On June 3, 2010, the PTO determined that Plaintiffs had failed to overcome the rejection of Claim 1 as anticipated by the prior art, and it issued an Advisory Action cancelling the claim. (DE 228-1). On June 23, 2010, Plaintiffs appealed the PTO's cancellation of Claim 1 to the Board of Patent Appeals and Interferences ("BPAI"). Given that the appeal of the Final Judgment was still pending, Defendants apprised the Federal Circuit of the PTO's cancellation of Claim 1, doing so on or before July 15, 2010. See Reply Br. of Defs./Appellants Plasteak, Inc. and

Plasdeck, Inc. at 26, 2010 WL 3051438. Upon Defendants' motion, on July 20, 2010, the District Court acknowledged the PTO's "particular expertise in such [invalidity] issues" and in deference thereto terminated the Permanent Injunction and stayed execution of the judgment and the post-judgment discovery, pending disposition of Plaintiffs' BPAI appeal. (DE 231 at 10-13).

G. The Disposition of the Judicial and Administrative Appeals

On November 2, 2010, the Federal Circuit affirmed the Final Judgment without comment, pursuant to Federal Circuit Rule 36. (DE 234). And on May 27, 2011, the Federal Circuit dismissed as moot the appeal of the Permanent Injunction. (DE 274).

On July 27, 2011, the BPAI affirmed the PTO Examiner's decision to cancel Claim 1 as anticipated by the (Kemerer) prior art. (DE 288-3 at 30). Plaintiffs did not thereafter seek judicial review of the BPAI's decision before the Federal Circuit. (DE 288-3 at 8).

On December 6, 2011, the PTO issued an Ex Parte Reexamination Certificate, which finalized the reexamination process; it upheld the cancellation of the sole claim at issue in this case, Claim 1, and it allowed 28 new claims – Claims 2-29. (DE 278-1 at 2).

H. The Motions for Relief from Judgment/The Complaint re: New Claims

On January 6, 2012, one month after the PTO had issued its Ex Parte Reexamination Certificate, Defendants filed their (initial) Motion for Relief from Judgment. (DE 279). On January 10, 2012, the undersigned denied the (initial) Motion for administrative purposes with leave to renew upon completion of mediation. (DE 281).

On February 6, 2012, Plaintiffs filed a new Complaint for Damages and Injunctive Relief for Willful Infringement of United States Patent No. 6,895,881 in the United States District Court for the Southern District of Florida – Case No. 12-60215-CIV-PAS. This

8

Complaint alleges, inter alia, that Defendants' accused product infringes upon new Claims 2-29 of the Reissued Patent. (DE 1, Case No. 12-60215-CIV-PAS).

On May 29, 2012, after mediation in this matter (Case No. 08-60996-Civ-Cohn/Seltzer) had reached an impasse, Defendants filed the instant Renewed Motion for Relief from Judgment. (DE 287). Pursuant to Federal Rule of Civil Procedure 60(b)(5) and (6), Defendants ask the Court to exercise its discretionary authority and  vacate the (terminated) injunction and the money judgment, as well as all related orders premised on the presumed validity of the patent. Defendants argue that it would be inequitable to allow those orders to stand, given that the PTO has now invalidated the sole claim on which this action had been brought.  Defendants also argue that it would be inequitable to permit Plaintiffs to benefit from their failure to disclose the relevant prior art to the PTO during patent prosecution, as well as to Defendants during discovery.  On June 19, 2012, Plaintiffs responded to the Renewed Motion (DE 292), arguing that relief should not be granted because by virtue of the language of (new) Claim 2, (original) Claim 1 remains in the reexamined '881 Patent.  They also opposed relief because Defendants allegedly delayed in initiating the reexamination proceeding.  On June 29, 2012, Defendants replied to Plaintiff's response.  And on July 12, 2012, the undersigned entertained oral argument on the Renewed Motion.

I.      Highlights of the Procedural History

| Date | Event | Docket Entry |
|---|---|---|
| April 18, 2005 | IPONZ revokes Plaintiffs' NZ Patent | 49 |
| May 24, 2005 | PTO issues '881 Patent | 155 |
| June 30, 2008 | Plaintiffs file Complaint for infringement of '881 Patent (Case No. 08-60996-Civ-Cohn/Seltzer) | 1 |

9

| | | |
|---|---|---|
| May 22, 2009 | Plaintiffs file Motion In Limine arguing that Defendants failed to identify specific prior art in support of invalidity defenses | 92 |
| June 5, 2009 | District Court GRANTS Plaintiffs' Motion for Summary Judgment on defenses of anticipation and obviousness | 52; 112 |
| June 9, 2009 | Defendants respond to Motion in Limine with citations to prior art in support of invalidity defenses | 118 |
| June 19, 2009 | Jury verdict in favor of Plaintiffs for literal infringement | 143 |
| July 3, 2009 | District Court enters order stating that Defendants had violated 35 U.S.C. § 282 by failing to provide sufficient notice as to the specific items of prior art upon which they would rely for invalidity defenses | 156 |
| July 3, 2009 | District Court enters Final Judgment | 158 |
| July 20, 2009 | Defendants file Request for Reexamination with PTO | 278-1 |
| July 31, 2009 | Defendants appeal Final Judgment to Federal Circuit | 163 |
| November 3, 2009 | PTO determines that there exists a question of patentability regarding Claim 1 of '881 Patent -- recognizing new prior art that was not considered during the initial prosecution of the patent | 201-3 |
| January 29, 2010 | PTO rejects Claim 1 of '881 patent (anticipation and obviousness) | |
| February 5, 2010 | District Court issues Permanent Injunction | 212 |
| March 5, 2010 | Defendants appeal Permanent Injunction to Federal Circuit | 217 |
| March 29, 2010 | Plaintiffs respond to PTO's rejection of Claim 1 | |
| March 29, 2010 | Defendants file Amended Motion for Protective Order and Stay of Execution and for Termination of Permanent Injunction | 221 |
| April 21, 2010 | PTO rejects Plaintiffs' arguments regarding cancellation of Claim 1 -- Final Action issued | 227-1 |
| June 3, 2010 | PTO issues Advisory Action -- Plaintiffs failed to overcome rejections of Claim 1 | 228-1 |
| June 23, 2010 | Plaintiffs appeal decision of PTO to BPAI | |
| July 15, 2010 | Defendants file Reply with Federal Circuit, disclosing PTO's cancellation of Claim 1 as anticipated by (Kemerer) prior art | 2010 WL 3051438 |
| July 20, 2010 | District Court stays of execution of Final Judgment and post-judgment discovery and terminates Permanent Injunction | 231 |
| November 2, 2010 | Federal Circuit affirms Final Judgment without opinion | 158; 234 |

| May 27, 2011 | Federal Circuit dismisses as moot appeal of Permanent Injunction | 274 |
| July 27, 2011 | BPAI affirms PTO Examiner's cancellation of Claim 1 as anticipated by (Kemerer) prior art | 228-2 |
| December 6, 2011 | PTO issues Ex Parte Reexamination Certificate, cancelling Claim 1 and adding new Claims 2-29 | 278 |
| January 6, 2012 | Defendants file (initial) Motion for Relief from Judgment | 279 |
| January 10, 2012 | Defendants' (initial) Motion for Relief from Judgment is denied for administrative purposes, with leave to renew, if necessary, following mediation | 281 |
| February 6, 2012 | Plaintiffs commence second action against Defendants – Case No. 12-60215-CIV-PAS; Complaint alleges that Defendants infringe new Claims 2-29 of Reexamined Patent | Case No. 12-60215-CIV-PAS |
| May 29, 2012 | Defendants file Renewed Motion for Relief from Judgment | 287 |
| June 19, 2012 | Plaintiffs file Response to Renewed Motion for Relief from Judgment | 292 |
| June 29, 2012 | Defendants file Reply to Plaintiffs' Response to Renewed Motion for Relief from Judgment | 294 |
| July 12, 2012 | Court hears oral argument on Renewed Motion | 295 |

The Renewed Motion is now ripe for review.

II.   LAW

   A.   Federal Rule of Civil Procedure 60(b)(5) and (6)

   Federal Rule of Civil Procedure 60(b) authorizes a court to relieve a party from an

order or judgment for any of six specified reasons. See Fed. R. Civ. P. 60(b). Here,

Defendants seek relief from the Final Judgment, the Permanent Injunction, and all related

orders for two of those six reasons; one reason is set forth in the equitable leg of

subsection (b)(5), and the other in subsection(b)(6). More specifically, Rule 60(b)(5) and

(6) provides:

> (b) On motion and just terms, the court may relieve a party or
> its legal representative from a final judgment, order, or
> proceeding for the following reasons: . . . (5) the judgment has

> been satisfied, released, or discharged; it is based on an
> earlier judgment that has been reversed or vacated; or
> applying it prospectively is no longer equitable; or (6) any other
> reason that justifies relief.

Fed. R. Civ. P. 60(b)(5) and (6) (emphasis added).

Subsections (b)(5) and (b)(6) of the Rule are mutually exclusive. See Amado v. Microsoft Corp., 517 F.3d 1353, 1363 (Fed. Cir. 2008) (stating that relief under (b)(6) may not be "premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)"). But under both subsections motions must be made within "a reasonable time"; the one-year limitations period that applies to Rule 60(b)(1-3) does not apply to Rule 60(b)(4-6). See Fed. R. Civ. P. 60(c). And under both subsections a judge must strike "a delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts." Twelve John Does v. District of Columbia, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (emphasis in original) (citations and internal quotations omitted); see also Life Technologies, Inc. v. Promega Corp., 189 F.R.D. 334, 336 (D. Md. 1999) ("Relief under Rule 60 should be based on equitable principles and a balancing of the hardships to the parties."). Given the challenges of balancing such competing considerations, the authority to grant Rule 60(b) relief is committed to the sound discretion of the district judge. See Twelve John Does, 841 F.2d at 1138 (stating "the district judge, who is in the best position to discern and assess all the facts, is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion"); Elgin Nat'l Watch Co. v. Barrett, 213 F.2d 776, 780 (5th Cir. 1954) ("[I]f equitable grounds for such relief [from a final judgment] were established, it was within the sound discretion of the trial court, exercised in the interest of justice, to dissolve the injunction.").

1.    Subsection 60(b)(5)

In Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992), the Supreme Court stated that to qualify for Rule 60(b)(5) relief, a movant must establish that "a significant change of circumstances warrants revision of the decree." Id. at 380; accord Agostini v. Felton, 521 U.S. 203, 215 (1997) (stating that in Rufo "we held that it is appropriate to grant a Rule 60(b)(5) motion when a party seeking relief from an injunction or consent decree can show a 'significant change either in factual conditions or in law.'"); Life Technologies, 189 F.R.D. at 336 (observing that Rule 60(b)(5) "gives the Court equitable power to relieve a party from a judgment when, in light of changed circumstances, it is no longer equitable that the judgment should have prospective application" and stating that "[a] material change of operative facts is sufficient" to grant relief);[5] 11 Charles Alan Wright et al., Federal Practice and Procedure § 2863 (2d ed. 1995) (stating that courts will grant Rule 60(b)(5) relief "if it no longer is equitable that the judgment be enforced, whether because

---

[5] Life Technologies was a patent infringement action in which the court assessed a Rule 60(b)(5) and (6) motion in light of a material change of circumstances. 189 F.R.D. 334. Based upon the parties' settlement agreement, the court had entered a Consent Judgment Order, enjoining the continued sale of certain infringing products. Id. at 335. Thereafter, in a second action, the same court ruled that the same patent was unenforceable, as Life Technologies had engaged in inequitable conduct by withholding material information from the PTO. Id. at 335-36. On the Rule 60(b)(5) motion, the court determined that its finding of unenforceability in the second action constituted a material change in circumstances, warranting equitable relief in the first action, in which the motion had been filed. Id. at 337. Because it found that relief was warranted under Rule 60(b)(5), the court did not believe it necessary to address in detail Rule 60(b)(6), which the movants had proffered as an alternative ground for relief. Nonetheless, the court expressly noted that the facts before it also met the "extraordinary circumstances" standard for Rule 60(b)(6) relief. According to the court: "The inconsistency of the Promega Order [in the first action, enjoining the sale of the infringing product] and Clontech ruling [in the second action, holding that the patent at issue was unenforceable,] along with the recent finding of inequitable conduct by [Life Technologies] constitute extraordinary circumstances." Id. at 337 n.2 (emphasis added).

13

of subsequent legislation, a change in decisional law, or a change in operative facts.").

But the equitable leg of subsection (b)(5) has limited application; it allows relief from judgments and orders only to the extent that their application would be "prospective," that is, where "applying [them] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The provision, therefore, implicitly contrasts "judgments that have prospective effect . . . with those that offer a present remedy for a past wrong." Cook v. Birmingham News, 618 F.2d 1149, 1152 (5th Cir. 1980). "[T]he standard [to be applied] in determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is 'executory' or involves 'the supervision of changing conduct or conditions . .

. ." Twelve John Does, 841 F.2d at 1139.[6]   An injunction, therefore, as it requires the ongoing supervision of the court, is considered "prospective" in its application. See Marshall v. Board of Ed., Bergenfield, N.J., 575 F.2d 417, 425 (3d Cir. 1978) (stating that the "prospective application" clause of Rule 60(b)(5) "incorporates the time-honored rule that a 'court of equity (may) modify an injunction in adaptation to changed conditions") (quoting United States v. Swift & Co., 286 U.S. 106, 114 (1932)); Lubben v. Selective Service System Local Bd. No 27, 453 F.2d 645, 651 (1st Cir. 1972) (stating the clause of Rule 60(b)(5) allowing relief from inequitable application of judgment was designed to

_____

[6] In Twelve John Does, the court acknowledged that "[v]irtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect; even a money judgment has continuing consequences, most obviously until it is satisfied, and thereafter as well inasmuch as everyone is constrained by his or her net worth." 841 F.2d at 1138. For purposes of the rule, however, the court noted that not all actions having continuing consequences also have prospective application: "That a court's action has continuing consequences, however, does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)." Id.; see also American Iron & Steel Institute v. EPA, 560 F.2d 589, 599 (3d Cir. 1977) (contrasting money judgment and other "inherently final" relief with "an order which necessarily is of a continuing nature").

incorporate inherent right of court of equity to modify injunction in adaptation to changed circumstances). By contrast, courts construe a money judgment as a present remedy for past wrongdoings; money judgments, therefore, are not considered "prospective" for purposes of Rule 60(b)(5). See Marshall, 575 F.2d at 425 (observing that "a judgment at law for damages for past wrongs is inherently final" and concluding that refusal to vacate damages award conformed with mandate of Rule 60(b)(5)) (citations and internal quotations omitted)); Ryan v. United States Lines Co., 303 F.2d 430, 434 (2d Cir. 1962) (stating that Rule 60(b)(5) "does not cover the case of a judgment for money damages"); United States v. Eyler, 778 F. Supp. 1553, 1557 (M.D. Fla. 1991) (holding that back pay award is "present" rather than "prospective" remedy for purposes of Rule 60(b)(5)) (citing Gibbs v. Maxwell House, a Div. of General Foods, 738 F.2d 1153, 1156 (11th Cir. 1984) (stating that although a party may continue to feel the effects of a money judgment, it "is not a 'prospective effect' within the meaning of rule 60(b)(5)"). Even where a money judgment is "prospective" in the more general sense that it remains unpaid, such a judgment "is nevertheless a final order and is not 'prospective' for purposes of Rule 60(b)(5)." Stokors S.A. v. Morrison, 147 F.3d 759, 762 (8th Cir. 1998) (concluding "that Rule 60(b)(5)'s equitable leg cannot be used to relieve a party from a money judgment").

### 2. Subsection (b)(6)

By contrast with subsections (1)-(5) of Rule 60(b), which identify specific situations in which a court may modify or vacate final orders and judgments, subsection (6) is a catchall, residual clause that applies only where relief may not be available under any of the preceding five subsections. Twelve John Does, 841 F.2d at 315. By its terms, subsection (6) authorizes a court to relieve a party from a final judgement or order for "any

15

other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). In <u>Klapprott v. United States</u>, 335 U.S. 601 (1949), the Supreme Court articulated the broad scope of subsection (b)(6), "the other reason clause," distinguishing it from the more defined scope of subsections (b)(1-5): "[T]he language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is <u>appropriate to accomplish justice</u>." <u>Id.</u> at 614-15 (emphasis added); <u>accord</u> <u>Ritter v. Smith</u>, 811 F.2d 1398, 1400 (11th Cir. 1987) (stating that "it is within the district court's discretion to grant [Rule 60(b)(6) relief] in order to do justice") (citation omitted); <u>see also</u> <u>Twelve John Does</u>, 841 F.2d at 315 (describing the language of Rule 60(b)(6) as "essentially boundless"). The Supreme Court, however, subsequently characterized <u>Klapprott</u> as a "case of extraordinary circumstances." <u>Ackerman v. United States</u>, 340 U.S. 193, 199 (1950). And other courts have similarly observed that Rule 60(b)(6) is a clause reserved for "extraordinary cases." <u>See, e.g.</u>, <u>Gray v. Estelle</u>, 574 F.2d 209, 215 (5th Cir. 1978) (citing <u>Ackerman</u>, 340 U.S. 193, 200)); <u>Stradley v. Cortez</u>, 518 F.2d 488, 493 (3d Cir. 1975) ("Rule 60(b)(6) is available only in cases evidencing extraordinary circumstances . . . and only when the relief sought is based upon 'any other reason' than a reason which would warrant relief under 60(b)(1-5).").

In determining whether a matter presents "extraordinary circumstances" for purposes of Rule 60(b)(6), courts look to several factors. A clear-cut change in the law is a necessary, but not sufficient, basis for granting relief. <u>Ritter</u>, 811 F.2d at 1401 (observing that "something more than a 'mere' change in the law is necessary to provide the grounds for Rule 60(b)(6) relief"). Other factors that courts often consider are: 1) whether the previous, erroneous judgment of the court has yet to be executed, for when execution has

occurred "a concomitantly greater interest in finality exists"; 2) whether there has been a lengthy delay before the filing of the Rule 60(b)(6) motion, as "the longer the delay the more intrusive is the effort to upset the finality of the judgment";[7] 3) whether there is a close relationship between the proceeding that gave rise to the change in the law and the proceeding currently before the court, including whether the two proceedings "arose out of the same transaction"; and 4) whether the case raises concerns of comity between the state and federal courts. Id. at 1401-03.[8]

Although subsection (b)(6) requires a showing of "extraordinary circumstances," unlike subsection (b)(5), it is not limited by its terms to judgments and orders that have "prospective application." See Fed. R. Civ. P. 60(b)(6) (stating simply that court may relieve party from final judgment or order for "any other reason that justifies relief"); see also Twelve John Does, 841 F.2d at 315 ("[A] more compelling showing of inequity or hardship is necessary to warrant relief under subsection (6) than under subsection (5); otherwise, the ready availability of subsection (6) would make meaningless the limitation of subsection (5) to judgments with prospective application"). Therefore, judgments for money damages, particularly when unexecuted, come within the very broad scope of the residual clause. See Compton v. Alton S.S. Co, Inc., 608 F.2d 96, 106-07 (4th Cir. 1979)

---

[7] In addition to the length of the day, courts look to see if the party seeking Rule 60(b)(6) relief bears responsibility for the delay. Amado, 517 F.3d at 1363 (stating that moving party must demonstrate "'extraordinary circumstances' suggesting the party is faultless in the delay." (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 393 (1993)).

[8] In addition, to satisfy the "extraordinary circumstances" standard, a movant must establish that it had pursued its claims with diligence, including an appeal of the district court's decision, as "Rule 60(b)(6) does not serve as a substitute for an appeal." Aikens v. Ingram, 652 F.3d 496, 502 (4th Cir. 2011); accord Ackermann, 340 U.S. at 198.

(ordering relief under Rule 60(b)(6) for all but $312.54 of a $58,340.80 default judgment); Fleming v. Mante, 10 F.R.D. 391 (N.D. Ohio 1950) (stating, on Rule 60(b)(6) motion, that it would reduce damages or, if defendant's offer were not accepted, set aside default judgment in its entirety); see also Ritter, 811 F.2d at 1401 (stating that on Rule 60(b)(6) motion court should consider whether judgment has been executed); cf Marshall 575 F.2d at 426 (affirming district court's denial of Rule 60(b)(6) request to set aside money judgment in absence of "exceptional circumstances" requiring "extraordinary relief").

B.    Patent Reexamination

In 1980, Congress enacted a statutory scheme to resolve concerns over erroneously issued patents, to restore confidence in the patent system, and to reduce the need for costly litigation to determine validity. See H.R. Rep. No. 96-1006, pt. 1, at 29 (1980); see also Patlex Corp. v. Mossinghoff, 758 F.2d. 594, 604 (Fed. Cir. 1985) ("The reexamination statute's purpose is to correct errors made by the government, to remedy defective governmental (not private) action, and if need be to remove patents that should never have been granted."). The statutory scheme authorizes any person at any time to petition the PTO to reexamine a patent to determine whether prior art raises a substantial new question of patentability that had not been considered during the original patent prosecution.[9] See 35 U.S.C. §§ 301-307; see also Everything for Love.com, Inc. v. Tender Loving Things, Inc., No. CIV 02-2605-PHX-EHC, 2006 WL 2091706, at *2 (D. Ariz. July 21, 2006) ("Reexamination is a procedure, added in 1980, to provide a means whereby a patentee, or any member of the public, may ascertain whether a substantial new question

---

[9] "Any person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of section 301 of this title." 35 U.S.C. § 302.  (emphasis added).

18

of patentability can be raised against an issued patent on the basis of documentary prior art." (citation omitted)). "Congress intended reexaminations to provide an important 'quality check' on patents that would allow the government to remove defective and erroneously granted patents." In re Swanson, 540 F.3d 1368, 1375 (Fed. Cir. 2008) (citations omitted). Accordingly, every "defectively examined and therefore erroneously granted patent must yield to the reasonable Congressional purpose of facilitating the correction of governmental mistakes." Patlex Corp., 758 F.2d. at 604 .

When the PTO determines that a substantial new question of patentability does exist, it grants the request for reexamination and notifies the patent holder, which may then argue why the patent should be upheld. See 35 U.S.C. § 304. The patent holder may also amend or add claims to distinguish the patent from the prior art, provided that it does not enlarge the scope of the claims. See 35 U.S.C. § 305. Once the PTO has completed its reexamination, the patent owner may appeal the PTO's cancellation of any claim to the BPAI and, thereafter, to the Federal Circuit. See 35 U.S.C. § 306. After all appeals have been exhausted, or the time for appeal has run, the PTO will issue a certificate cancelling any claim of the patent determined to be unpatentable, confirming any claim determined to be patentable, and incorporating in the patent any amended or new claim determined to be patentable. See 35 U.S.C. § 307(a).

PTO reexaminations differ materially from judicial determinations of patent validity. "In civil litigation, a challenger who attacks the validity of patent claims must overcome the presumption of validity with clear and convincing evidence that the patent is invalid." In re Swanson, 540 F.3d at 1377 (citing 35 U.S.C. § 282); see Patlex, 758 F.2d at 605 (explaining that the presumption of validity is a "presumption of administrative

correctness"). Therefore, when the presumption of validity is not overcome, "courts do not find patents valid, only that the patent challenger did not carry the burden of establishing invalidity in the particular case before the court." In re Swanson, 540 F.3d at 1377 (internal quotations and citations omitted) (emphasis in original). By contrast, PTO reexaminations employ a "substantially lower" standard of proof – "preponderance of the evidence." Id. And in PTO reexaminations there exists no presumption of validity, as the Examiner is not attacking the patent's validity, but conducting a subjective examination of the claims in light of the prior art. Id.; see Patlex, 758 F.2d at 605 (explaining that litigation presumption of patent validity does not apply in reexamination proceedings, as purpose of such proceedings is "the remedy of administrative error"). And unlike district court litigation, PTO reexaminations give claims their broadest reasonable interpretation, consistent with the specification. Id. (citations omitted). Accordingly, PTO reexaminations owe no deference to a district court's previous determination with respect to validity, as the two are "differing proceedings with different evidentiary standards." In re Swanson, 540 F.3d at 1379.[10]

_____

[10] Because PTO reexaminations and civil litigation are not duplicative, but are differing proceedings with different evidentiary standards, the Federal Circuit concluded that there is no constitutional ("separation of powers") infirmity when the PTO, an executive agency, finds patent claims invalid after an Article III court has upheld their validity. In re Swanson, 540 F.3d at 1378-79. "In contrast," the Federal Circuit noted, an "attempt to reopen a final federal court judgment of infringement on the basis of a reexamination finding of invalidity might raise constitutional problems." Id. at 1379 n.5 (emphasis added). The court's concern was rooted in several Supreme Court holdings that prohibit Congress from vesting review of Article III decisions in Executive Branch officials. Id. at 1378-79 (citing cases).

The undersigned concludes that the facts of this case do not raise "separation of powers" concerns. Defendants here do not argue that the PTO's decision, as a matter of law, supersedes the District Court's Final Judgment and mandates that it be vacated. (DE 287). Rather, Defendants speak to the District Court's discretionary authority, an authority that finds its grant in the court's own rules of procedure. Specifically, Defendants request

III.   ANALYSIS

   A.   PTO's Invalidation of Sole Claim Warrants Rule 60(b)(5) and (6) Relief

   The undersigned concludes that Defendants are entitled to the relief they seek
under Rule 60(b)(5) and (6), as it would be inequitable and unjust to let stand, let alone
enforce, an injunction and an unexecuted money judgment predicated on a patent claim
found to be invalid and cancelled.  By invalidating and cancelling Claim 1, the PTO
rendered the sole claim of the '881 Patent "void ab initio," a legal nullity. See Standard
Havens Products, Inc. v. Gencor Industries, Inc., 996 F.2d 1236 (Fed. Cir. 1993) (stating
that "a final decision of unpatentability means the patent was void ab initio"); cf. United
Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 1377 (2010) (describing void
judgment as "a legal nullity" that is "affected by a fundamental infirmity").  Because the
District Court litigation was premised upon the presumed validity of a claim later found to
have been void from its inception, the PTO's decision constitutes a material change in
operative facts warranting equitable relief. See Life Technologies, 189 F.R.D. at 337
(stating, upon motion for relief from judgment in patent infringement action, that a "finding
that the [underlying] '797 Patent is unenforceable is a material change in circumstances
that affects the Promega Order [enjoining the sale of the infringing products] and warrants
equitable relief").  As Defendants have shown a material change in circumstances
warranting equitable relief, the Permanent Injunction, as well as all related orders that have
prospective application, should be vacated pursuant to Rule 60(b)(5).

   In addition, the Final Judgement for money damages, as well as all related orders

---

relief under Federal Rule of Civil Procedure 60(b)(5) and (6), see Renewed Motion at 2 (DE
287), which gives judges the latitude to vacate judgments and orders when, in their
determination, the equities or the interests of justice warrant.

that do not have prospective application, should be vacated pursuant to Rule 60(b)(6), as Defendants have also shown "extraordinary circumstances" warranting relief "to accomplish justice." On these facts, the "extraordinary circumstances" are plainly evident. First, the PTO invalidated Claim 1, rendering the claim void ab initio. The PTO's decision constitutes a significant change in circumstances, as the invalidated claim was the very basis for the litigation before this Court. See Life Technologies, 189 F.R.D. at 337 n.2 (noting that inconsistency between existing consent decree and subsequent finding of patent unenforceability in separate matter constitutes "extraordinary circumstances," such that case meets standard for relief not only under Rule 60(b)(5), but also under Rule 60(b)(6)).

Second, given the identity of claims before the PTO and the District Court, coupled with the Court's decision to terminate the Permanent Injunction following the PTO's reexamination, there exists an extremely close relationship between the two proceedings. Indeed, both proceedings "arose out of the same transaction," in that both resulted from the PTO's 2005 decision to issue the '881 Patent containing a single claim, Claim 1.

Third, after the PTO invalidated Claim 1, the Court stayed execution of the judgment. As one appellate court explained, "the fact that the previous judgment of this court, though final, was unexecuted is a significant factor in the extraordinary circumstances favoring relief from judgment in his case." Ritter, 811 F.2d at 1402 (emphasis added). By contrast, "[g]enerally courts have refused to undo the past, executed effects of the judgments." Id. Here, the District Court is not being asked to undo the past, executed effects of a judgment. Rather, in the interest of justice, it is being asked to prevent any execution on, and to vacate, a judgment predicated on a nullity.

Fourth, Defendants moved as expeditiously as could be expected. Although

Plaintiffs had failed to disclose the invalidating (Kemerer) prior art during discovery, Defendants learned of it through unrelated litigation. Defendants then sought to utilize the (Kemerer) prior art to establish their invalidity defense. Plaintiffs contested any use of this art and, on procedural grounds, the evidence was excluded. Following entry of Final Judgment, Defendants diligently pursued relief on two tracks. The first track was administrative; seventeen (17) days after entry of the Final Judgment, they initiated a reexamination of the patent before the PTO. The PTO examined the prior art, invalidated the patent, and issued its Ex Parte Reexamination Certificate cancelling Claim 1 on December 6, 2011. The second track was judicial; twenty-eight (28) days after entry of the Judgment, Defendants filed an appeal in the Federal Circuit based, in part, on the exclusion of the Kemerer reference. Defendants, therefore, diligently pursued their defense of this action. Cf. Amado, 517 F.3d 1353 (affirming denial of Rule 60(b)(6) relief where movant was at fault for delay in bringing statements made to PTO to the district court's attention; in addition, movant had not pursued an appeal, and PTO had not canceled patent claim). On May 27, 2011, the Federal Circuit dismissed as moot the appeal of the Permanent Injunction. And on January 6, 2012, Defendants filed the (initial) Motion for Relief from Judgment. Notwithstanding that Rule 60(b)(6) "empowers the court to reopen a judgment even after one year has passed," Pioneer Ins. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 393 (1993), the time frames here are far shorter, and under the circumstances they were certainly reasonable. Defendants filed the (initial) Motion for Relief only seven (7) months after the Federal Circuit dismissed the appeal of the Permanent Injunction and, more importantly, less than thirty (30) days after the PTO

issued its Ex Parte Reexamination Certificate cancelling Claim 1.[11]

In sum, the material change in circumstances occasioned by the PTO's cancellation of Claim 1, the close relationship between the PTO proceeding and this District Court litigation, the absence of any execution on the Final Judgment, and the relatively brief time frames separating the Federal Circuit's dismissal, the PTO's cancellation, and Defendants' (initial) Motion, all strongly support a finding of "extraordinary circumstances" and the grant of Rule 60(b)(6) relief.

Further, to allow the judgment, the injunction, and the related orders to stand when they are predicated on a nullity would undercut the legislative intent of the reexamination process, that is, remedying erroneously issued patents. See In re Swanson, 540 F.3d at 1378 (noting "Congress' purpose of allowing for a reexamination procedure to correct examiner errors") (citing Patlex, 758 F.2d at 604 (noting "the reasonable Congressional purpose facilitating the correction of governmental mistakes")). Denying Rule 60(b) relief would strip the PTO's decision of its intended remedial effect, as it would still leave Defendants to suffer the continued consequences of an erroneously issued patent.[12]

Finally, in addition to the equitable principles, the undersigned has considered the respective hardships that would result from a decision under either subsection – (b)(5) or (b)(6). See Life Technologies, 189 F.R.D. at 335 (stating that Rule 60 assessment "should be based on equitable principles and a balancing of the hardships of the parties"). On

---

[11] The undersigned notes that this case does not implicate concerns of federal-state comity. See Ritter, 811 F.2d at 1403 (stating that comity is another factor courts may consider in their "extraordinary circumstances" assessment).

[12] Unlike Defendants, any other entities that had infringed, or that continue to infringe, (cancelled) Claim 1 would not suffer from the examiner's error, as the reexamination has now shielded them from liability.

these facts, the undersigned finds that the balance of the hardships weighs clearly in Defendants' favor. The PTO's decision worked a significant change in circumstances warranting equitable relief, as it cancelled – and, thereby, rendered void ab initio – the very basis of the litigation. See id. at 339 (finding that although there are "hardships on both sides in this matter, the balance of the hardships weighs in Promega's favor," as the "ruling rendering Patent '797 unenforceable works a significant change in circumstances requiring equitable relief under Rule 60(b)(5)"). Now that it is been finally determined that the sole claim in this litigation had been void from its inception, denying Rule 60(b) relief would visit an extreme hardship on Defendants; they would forever bear the costly burden of an erroneously issued patent. By contrast, granting of Rule 60(b) relief would work far less of a hardship on Paintiffs. Although they would no longer enjoy the benefits of the injunction and the money judgment that had been entered by this Court, they will nonetheless be given another opportunity to secure any relief to which they are lawfully entitled, including another injunction and money judgment, when the reissued claims are adjudicated in Case No. 12-60215-CIV-PAS.

B.     Plaintiffs' Failure to Disclose Prior Art Provides Additional Ground for Relief

The undersigned has concluded that the PTO's invalidation and cancellation of Claim 1, rendering the claim void ab initio, is an adequate and independent ground for granting Rule 60(b)(5) and (6) relief and vacating the Final Judgment, the Permanent Injunction, and all related orders. Although the PTO's decision, alone, is sufficient, the undersigned also finds that Plaintiffs' failure to disclose to the PTO material prior art of which it was aware – during and/or following prosecution of the patent application – not only violates a legal duty, but provides an additional reason "to accomplish justice" by

25

granting relief under subsection (b)(6). See 37 C.F.R. § 1.56 (establishing duty to disclose to PTO all information material to patentability); see also Elmwood Liquid Products, Inc. v. Singleton Packing Corp., 328 F. Supp. 974, 986 (M.D. Fla. 1971) (discussing ongoing duty of candor following prosecution of patent application).[13]

By virtue of their involvement in the IPONZ proceeding, including the filing of a counterstatement addressing Kemerer, Plaintiffs – be it their employees, agents, and/or attorneys – knew of the invalidating (Kemerer) prior art. Plaintiffs tacitly conceded as much, contending that they had "a good faith basis for not disclosing the material to the USPTO," in part, because the "prior art used or presented to IPONZ is not material or relevant to the issued structure of the '881 Patent." (DE 88 at 5, 6). Yet, that art (cited by IPONZ), which Plaintiffs here contend was "not material or relevant," is the same art cited by the PTO Examiner in his rejection of Claim 1 and by the BPAI in its affirmance of the PTO Examiner's rejection. (DE 288-3, at 25-30, 68-71). Hence, even if Plaintiffs

---

[13] In their Answer to the Complaint for infringement of the '881 Patent, Defendants had asserted, inter alia, an affirmative defense of unenforceability due to inequitable conduct. This defense was based on Plaintiffs' failure to disclose the IPONZ decision and the prior art contained therein during the prosecution of the U.S. patent application. As set forth above, see discussion supra p. 6, the Court found that Defendants had established that the IPONZ decision and the prior art referenced therein were material, but that they had failed to establish "by clear and convincing evidence" that Plaintiffs possessed an intent to deceive the PTO; the Court found that Plaintiffs' CEO and President had acted in good faith reliance upon the advice of counsel. (DE 155 at 13-15). Yet, the Court also stated that were the standard of proof lower, that is, were the standard "simply a preponderance of the evidence," this case would present a far more difficult question." (DE 155 at 14). A fair inference, therefore, is that Court believed there to be at least some evidence of an intent to deceive in Plaintiffs' failure to disclose prior art to the PTO.

Unlike the affirmative defense of inequitable conduct, Rule 60(b)(6) relief does not require a showing of an intent to deceive. See Klapprott, 335 U.S. at 614-15 (subsection (b)(6) relief should be granted "whenever such action is appropriate to accomplish justice"). Nonetheless, to whatever extent the evidence does suggest such an intent to deceive, it lends yet further support to the conclusion that justice would be accomplished by granting Rule 60(b)(6) relief.

possessed a subjective good faith belief that the Kemerer prior art was not relevant, they nonetheless knew of the invalidating art. And whatever their intent, the failure to disclose that art resulted in the PTO issuing Claim 1 and, ultimately, in this Court issuing the Final Judgment and Permanent Injunction. Stated differently, had Plaintiffs at any time disclosed the prior art to the PTO, Claim 1 would not have issued or, if initially issued, would have been cancelled before this litigation commenced.[14] The undersigned, therefore, concludes that the interests of justice would be served by granting Rule 60(b)(6) relief, as Plaintiffs'

---

[14] In addition to arguing that they were harmed by Plaintiffs' failure to disclose the (Kemerer) prior art to the PTO, Defendants argue that they were also harmed by Plaintiffs failure to disclose that prior art, when requested, during pretrial discovery. In their January 2009 (unverified) interrogatory responses, provided to Defendants by Plaintiffs' counsel, Plaintiffs identified New Zealand Patent No. 516110 as a patent that corresponded to the '881 patent and disclosed that the New Zealand Patent had been revoked; yet, Plaintiffs represented that they were "without knowledge" of any art cited by IPONZ. (DE 29, at 16-17). Defendants argue that Plaintiffs' representation concerning the IPONZ prior art citations is belied by the time records of Plaintiffs' own attorneys. (DE 29 at 16-17). Those time records indicate that Plaintiffs' attorneys reviewed the IPONZ revocation and prior art as early as September 29, 2008, and then again on October 9, 2008, October 21, 2008, February 12, 2009, and March 18, 2009. (DE 184-1 at 16, 17, 26, 32).

The undersigned, however, did not take testimony on this issue and, therefore, declines to ascribe to Plaintiffs any intent in disclaiming knowledge of the prior art cited by IPONZ. Nonetheless, counsel's examinations of the IPONZ revocation, documented on at least five occasions, strongly suggest that Plaintiffs, through counsel, knew – or, at the very least, should have known – of the prior art cited by IPONZ.

Less clear, however, is whether as a result of this non-disclosure Defendants suffered any harm that would warrant equitable relief. Despite Plaintiffs' failure to disclose, Defendants did learn of the (Kemerer) prior art before trial, albeit through unrelated litigation. Therefore, unlike Plaintiffs' failure to disclose the prior art to the PTO, which resulted in the issuance of an invalid patent, the consequences of Plaintiffs' discovery violation are speculative. It cannot be determined whether Defendants, had they been informed of the prior art in January 2009, would have sought a PTO reexamination before trial. Nor can it be determined whether Defendants would have complied with the statutory (30-day) disclosure requirement and, therefore, been able to present the (Kemerer) prior art to the jury in support of their anticipation defense. Because it remains speculative whether Defendants suffered harm as a result of Plaintiffs' interrogatory response, the undersigned declines to recommend that equitable relief be granted on the basis of this discovery violation.

27

actions – whether or not undertaken with an intent to deceive – caused Defendants to suffer great harm.

In sum, Plaintiffs' failure to disclose material prior art to the PTO resulted in the PTO issuing an invalid patent and in the District Court ultimately entering an injunction and a judgment against Defendants. Plaintiffs' non-disclosure, therefore, caused considerable harm to Defendants and provides additional reason to conclude that justice would be served by granting Rule 60(b)(6) relief.

C.    Plaintiffs' Opposition to Rule 60(b)(5) and (6) Relief is Unavailing

1.    Original and Reissued Patent Claims Are Not "Substantially Identical"

Plaintiffs counter that Rule 60(b) relief is not warranted. They rest their opposition to relief on a comparison between (cancelled) Claim 1 and (new) Claim 2, as well as the results that follow from that comparison. More specifically, Plaintiffs argue the Final Judgment should not be vacated "because original claim 1 is expressly recited, by reference, through, at least, claim 2 of the Reexamined '811 Patent and remains 'substantially identical' to original claim 1, as required by section 252 of title 35 of the United States Code and interpreting case law." (DE 292 at 6). According to Plaintiffs, Claim 2 simply clarified Claim 1; it was "amended to recite what was known and necessarily present, but not expressly recited in the original claim." (DE 292 at 9) (emphasis in original). Proceeding from the premise that the claims are "substantially identical," they conclude that Claim 2 constitutes a continuation of Claim 1 and must therefore be accorded continuous effect from the date of the original '881 Patent. (DE 292 at 6). Plaintiffs, therefore, ask that "the originally issued final judgment . . . simply be amended to include at least claim 2 of the Reexamined '811 Patent." (DE 292 at 11).

28

Plaintiffs base their argument on 35 U.S.C. § 252, which provides that "the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent." Id. (emphasis added); see also 35 U.S.C. § 307(b) ("Any . . . new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252"); Everything For Love.com, 2006 WL 2091706, at *2 ("When reexamined claims are substantively identical, the claims have a continuous effect from the date of the original patent.") (citations and internal quotations omitted). The Federal Circuit has stated that "[r]eexamined claims are 'identical' to their original counterparts if they are 'without substantive change'" and that "in determining whether substantive changes have been made, [courts] must discern whether the scope of the claims are identical, not merely whether different words are used." Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed. Cir. 1998) (emphasis added); accord Abbey v. Bill Ussery Motors, Inc. 74 F. Supp. 2d 1217, 1220 (S.D. Fla. 1999) ("If an amended claim has a different scope than an original claim, then the claim has been substantively changed.").

In support of their argument that (new) Claim 2 is "substantially identical" to (cancelled) Claim 1 – and, therefore, has continuous effect from the date of the original '881 Patent – Plaintiffs direct the Court to the language of both claims. Claim 1 of the original '881 Patent – now cancelled – provided:

> 1. A shape conforming surface covering useful for covering any type of surfaces, characterized in that the surface covering comprises planks or sheet of a flexible material adapted to be interconnected aside of each other thereby forming an assembled surface covering of optional length and width, and which planks are of a material that can be laid in curved

29

> formations, and which at the upper surface of the covering is
> roughened so as to imitate any unique grain effect of wooden
> material, further characterized in that the planks or sheet are
> formed with longitudinal slots at the underside thereof for
> facilitating forming of curved coverings and for acting as a
> base glue or adhesive material by means of which the surface
> covering is mounted on a surface recipient.

And Claim 2 of the Reissued '881 Patent – newly added – provides:

> 2. The shape conforming surface covering of claim 1, wherein
> the planks or sheet are mounted on the surface recipient in a
> tightly curved formation only with adhesive and without the use
> of additional fasteners.

(emphasis added). Plaintiffs contend that Claim 2 does not change the scope of Claim 1,

as the new modifiers – "tightly curved" and "without the use of additional fasteners" –

though not expressly recited in Claim 1, were nonetheless "known and necessarily present"

in that original claim. Plaintiffs' contention is rebutted by the Prosecution History File

Wrapper (DE 288).

The prosecution history makes plain that Claim 2 was found patentable precisely

because it materially altered the scope of Claim 1. See Abbey, 74 F. Supp. 2d at 1220

("Each of the reexamined claims is clearly different in scope from, and therefore not

'identical' to, any of the original claims."). Here, both the PTO and the BPAI found Claim

1 invalid as anticipated by the (Kemerer) prior art.[15] Had the scope of (new) Claim 2 not

been substantively changed from that of (cancelled) Claim 1, then the PTO likely would

have found that Claim 2 was also anticipated by Kemerer. Id. at 1221 ("Further supporting

this conclusion is the fact that during reexamination both the PTO and the Court of Appeals

for the Federal Circuit found that original claim 1 was unpatentable in light of newly cited

---

[15] Plaintiffs elected not to seek judicial review of the BPAI's decision in the Federal
Circuit.

prior art. These prejudicial determinations are independent confirmation that the scope of reexamined claim 1 is substantively changed from its original scope. If the scope had not been changed, the reexamined claim, like the original would still be invalid."). Indeed, as the Federal Circuit has observed, "it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment." Laitram Corp., 163 F.3d at 1348. That (new) Claim 2 has a narrower scope, and therefore is not "substantially identical" to (cancelled) Claim 1, is evident not only from the language of the respective claims, but also from the statements of the PTO Examiner and the BPAI.

In explaining his rejection of Claim 1 as anticipated by the (Kemerer) prior art, the Examiner stated that because Claim 1 "does not require a 'curved' formation" and "does not specify the degree to which the product must be capable of being curved," the (Kemerer) prior art "which is capable of at least a slight degree of curvature . . . meets the broad claim [1] language." (DE 288-3 at 71). And in affirming the PTO Examiner's final rejection of Claim 1, the BPAI similarly observed that Claim 1 "does not recite any limits on the degree of curvature of the curved formations" (DE 288-3 at 24) and that Plaintiffs "do not limit the amount or direction of curving that is encompassed by claim 1." (DE 288-3 at 27). In addition, the Examiner rejected Plaintiffs' attempt to distinguish the (Kemerer) prior art on the ground that it (Kemerer) teaches the use of nails, rather than adhesives, to mount the planks on the surface recipient: "This argument is not persuasive because claim 1 does not positively recite an adhesive, but instead only requires a structure that is capable of being secured with an adhesive. . . . [T]he structure of Kemerer et al. has such capability. Further, claim 1 does not preclude the use of nails." (DE 288-3 at 71). On

31

review, the BPAI also rejected Plaintiffs' argument that Claim 1 was not anticipated because Kemerer requires nails to adhere large area panels. (DE 288-3 at 28-29).

Thereafter, the PTO considered and confirmed (new) Claim 2. In the Notice of Intent to Issue Ex Parte Reexamination Certificate, the PTO Examiner provided a "statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding." (DE 288-3 at 8). In that statement, the Examiner explained that Claim 2 is now "patentable because the cited prior art patents and printed publications fail to teach a shape conforming surface covering as defined in [this] claim[] including planks that are mounted on a surface recipient in a tightly curved formation only with adhesive and without the use of additional fasteners." (DE 288-3 at 8) (emphasis added). By limiting the degree of curvature to only a "tightly curved formation" and by limiting the mounting material to only adhesive – thereby excluding additional fasteners, such as nails – Claim 2 narrowed the scope of Claim 1. See Abbey, 74 F. Supp. 2d at 1220 ("If an amended claim has a different scope than an original claim, then the claim has been substantively changed."). Because the scope of Claim 1 had been narrowed, the PTO confirmed Claim 2. Abbey, 74 F. Supp. 2d at 1220 ("To obtain allowable claims, the patentee added limitations narrowing the scope of the claim."). And for that same reason – the claim scope had been narrowed – it had been substantively changed. See also Pall Corp. V. Micron Separations, Inc., 66 F.3d 1211, 1220 (Fed. Cir. 1995) ("a concession made . . . to establish patentability in view of prior art upon which the examiner relied, is . . . substantive").

In sum, Claim 1 had failed to limit the degree of curvature and had failed to recite an adhesive and to rule out other fasteners, such as nails. To overcome these failures and

to establish patentability, Plaintiffs added limitations in (new) Claim 2 that materially narrowed the scope of (cancelled) Claim 1. Because Claim 2 did not simply clarify Claim 1, Plaintiffs cannot persuasive argue that the two claims are "substantially identical." See Abbey, 74 F. Supp. 2d at 1220 ("These documents show that Plaintiff's post-rejection amendment of claim 1, based on newly-cited prior art, was more than a mere clarification."); see also Everything for Love.com, 2006 WL 2091706, at *2 ("If, during reexamination, the holder of the patent makes substantive changes to the original claims of the patent so that it may pass reexamination, there is an irrebuttable presumption that the original claims were materially flawed.").

        2.     Defendants Did Not Delay Reexamination for Tactical Advantage

Plaintiffs also argue that Rule 60(b) relief should be denied because Defendants sought to achieve a tactical advantage by delaying pursuit of a PTO reexamination until after trial: "Defendants chose to keep the [prior art] information in their back pocket with the intention of having two bites at the apple," a first bite before the District Court and, if need be, a second before the PTO. (DE 292 at 3). In support of their argument, Plaintiffs rely on Amado v. Microsoft, a Federal Circuit decision that affirmed a district court's denial of Rule 60(b)(6) relief on two grounds: 1) despite being aware before trial of the prior art upon which it sought a PTO reexamination, "Microsoft waited until after the judgment in this case to file its Petition for Reexamination"; and 2) Microsoft "simultaneously fail[ed] to appeal the jury's finding of validity." 517 F.3d at 1363. Plaintiffs' argument fails, as the instant dispute arises on different facts.

Here, Defendants did not learn of the invalidating prior art until after Plaintiffs had commenced this litigation in June 2008. Defendants propounded interrogatories that

33

should have elicited the disclosure, but in January 2009 Plaintiffs responded that they were "without knowledge" of any prior art cited by IPONZ. Soon thereafter, Defendants learned of the IPONZ prior art through unrelated litigation (DE 33-2 at 10-11; Case No. 08-60995-Civ-Dimitrouleas/Snow). Defendants promptly supplemented their initial disclosures to notify Plaintiffs of their intent to rely on this evidence. (DE 52-14). Plaintiffs moved to prevent any evidentiary use of the prior art, and the Court excluded it on account of Defendants' procedural violations; the jury, therefore, never had an opportunity to consider the merits of Defendants' anticipation defense. Seventeen (17) days after entry of the Final Judgment, Defendants brought the prior art to the attention of the PTO by way of a reexamination proceeding. And at the same time, Defendants pursued an appeal of the Final Judgment in the Federal Circuit; Defendants noticed an appeal eleven (11) days after initiating the PTO reexamination. The PTO cancelled Claim 1 while the appeal was still pending, and Defendants apprised the Federal Circuit of that decision. The Federal Circuit, however, affirmed the Final Judgment without issuing an opinion and later dismissed as moot the appeal of the Permanent Injunction. Unlike Microsoft (the Amado defendant), therefore, Defendants here were not aware of the prior art before trial; nor did they fail to pursue an appeal of the adverse judgment. Moreover, Defendants cannot fairly be said to have kept the prior art "in their back pocket" and delayed their pursuit of a PTO reexamination as part of a scheme to secure "two bites of the apple."

3.      Judgment Finality Does Not Supersede Rule 60(b) Relief

Finally, an underlying theme of Plaintiffs' opposition has been that a judgment, once final, should not easily be disturbed. The undersigned concurs to the extent that judges must always be mindful of "the sanctity of final judgments." Twelve John Does, 841 F.2d

34

at 1138. But "[i]f simple finality were sufficient to overcome a Rule 60(b)[] motion then no such motions would ever be granted." Ritter, 811 F.2d 1398.

Rule 60(b) provides an exception to judgment finality when warranted by the equities and the interests of justice. See United Student Aid Funds, 130 S. Ct. at 1376 (stating that "Rule 60(b) . . . provides an 'exception to finality' that 'allows a party to seek relief from final judgment, and request reopening of his case, under a limited set of circumstances'") (internal citations omitted); see also Ritter, 811 F.2d at 1402 (stating that "mere finality of judgment is not sufficient to thwart Rule 60(b)(6) relief from an unexecuted judgment"). Against the language of Rule 60(b), the Supreme Court has stated the "appeal to the virtues of finality. . . . standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality. The issue here is whether the text of Rule 60(b) itself, or of some other provision of law, limits its application in a manner relevant to the case before us." Gonzalez v. Crosby, 545 U.S. 524, 529 (2005).

Here, the text of Rule 60(b) does not limit, but militates in favor of, its application. Plaintiffs secured Claim 1 after failing to disclose material prior art to the PTO. That claim later became the sole basis of this litigation and, ultimately, the injunctive relief and monetary award. The PTO subsequently reexamined the claim and, in light of the previously undisclosed prior art, invalidated and cancelled the claim; the claim, therefore, is void ab initio and a legal nullity. Defendants now ask this Court to vacate an injunction that is prospective in its application and a judgment that remains unexecuted. The undersigned concludes that it would be inequitable and unjust to invoke the Court's powers to enforce a judgment and an injunction predicated upon a void claim, particularly one that issued only after Plaintiffs had failed to disclose material prior art to the PTO. On these

35

facts, Rule 60(b)(5) and (6) relief is warranted, notwithstanding the otherwise considerable interests of judgment finality.

D.    The Federal Circuit's Guidance

Although the parties have not proffered, and the undersigned has not located, any written decision that is "on all fours" with the facts here, the undersigned believes that the Federal Circuit's Standard Havens decision provides useful guidance.  In that action, the district court had denied the defendant's motion to stay a permanent injunction and to stay damages proceedings pending a final decision of a patent reexamination.  996 F.2d 1236. On appeal, the Federal Circuit reversed because the district court had incorrectly concluded that the reexamination decision could have no effect on the instant infringement suit, even if that decision became final.  The Federal Circuit held that "the reexamination proceeding would control the infringement suit" and, therefore, the injunction and damages proceedings should have been stayed.  Id. (internal quotations omitted).  Moreover, the Federal Circuit stated that a decision of unpatentability would mean that "the injunction would thereby immediately become inoperative" and, because "the patent was void ab initio, . . . damages would also be precluded."  Id.

Here, the PTO invalidated the sole claim in this litigation on the basis of previously undisclosed prior art.  The operative facts, therefore, have materially changed.  The viability of the Final Judgment and the Permanent Injunction now rest upon a claim that is void ab initio.  Judicial enforcement of the judgment and the injunction, even if legally permissible, would nonetheless be inequitable and unjust.  On these facts, therefore, the undersigned concludes that it would be an appropriate exercise of the District Court's discretionary authority to grant the requested relief under Rules 60(b)(5) and (6) and

vacate the injunction, the judgment, and all other orders premised upon the presumed validity of the one patent claim at issue.

IV.     RECOMMENDATION

For the foregoing reasons, this Court RECOMMENDS that Defendants' Renewed Motion for Relief from Judgment (DE 287) be GRANTED and that the Permanent Injunction[16] (DE 212) and the Final Judgment (DE 158) in favor of Plaintiffs be VACATED. Because they are predicated upon an invalidated and cancelled claim, the undersigned further RECOMMENDS that the following orders also be VACATED: Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment (DE 112); Order Denying Defendants' Renewed Motion to Dismiss (DE 126); Claim Construction Order (DE 127); Order Denying Defendants' Motion to Reconsider, Alter, or Amend (DE 152); Findings of Fact and Conclusions of Law re: Defendants' Affirmative Defense of Inequitable Conduct (DE 155); Corrected Order Denying Defendants' Motion to Reconsider, Alter, or Amend (DE 156); and Omnibus Order on Motion for Judgment as a Matter of Law, Order on Motion for New Trial, Order on Motion to Amend/Correct, Order on Motion to Alter Judgment (DE 174). Finally, the undersigned RECOMMENDS that the case be DISMISSED with PREJUDICE as it is predicated upon a claim that is void ab initio.[17]

---

[16] The undersigned is mindful that the District Court had previously "terminated" the Permanent Injunction and stayed execution of the judgment and the post-judgment discovery in deference to the PTO's finding of invalidity and the on-going administrative proceedings. (DE 231). To the extent that terminating the injunction may leave Defendants liable for any violation of the injunction prior to the termination date, the undersigned recommends that the injunction now be "vacated."

[17] Defendants have also asked to be granted "absolute intervening rights" to use or sell any products previously found to infringe Claim 1 of the patent. (DE 287 at 7). Absolute intervening rights provide an accused infringer the right to use or sell a product

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge.  Failure to file objections timely shall bar the parties from <u>de novo</u> determination by the District Judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge except upon grounds of plain error or manifest injustice. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Henley v. Johnson</u>, 885 F.2d 790, 794 (11th Cir. 1989).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 10th day of September 2012.

Barry S. Seltzer
Chief United States Magistrate Judge

Copies to:

Hon. James I. Cohn
United States District Judge

All Counsel of Record

---

that was made, used, or purchased before the grant of the reexamination certificate, as long as such activity did not infringe a claim of the reexamined patent that was in the original patent. <u>See</u> 35 U.S.C. §§ 252, 307(b). Here, none of the claims of the reexamined patent were in the original patent.  The undersigned, however, believes that Defendants' request is premature.  Intervening rights are a limitation on damages and, therefore, are not at issue unless and until the patent holder secures a liability judgment for infringement of the (reissued) patent.  <u>See</u> <u>BIC Leisure Prods., Inc.  v. Windsurfing Int'l, Inc.</u>, 1 F.3d 1214, 1220-21 (Fed. Cir. 1993).  That is a matter that awaits determination in Case No. 12-60215-CIV-PAS.