UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60996-CIV-COHN/SELTZER

FLEXITEEK AMERICAS, INC.,
et al.,

    Plaintiffs,

v.

PLASTEAK, INC., et al.,

    Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION
FOR LIABILITY FOR ATTORNEYS' FEES**

**THIS CAUSE** is before the Court upon Defendants' Motion for Determination of Liability for Attorneys' Fees [DE 309].  The Court has considered the motion, Plaintiffs' Response [DE 320], Defendants' Reply [DE 323], the record in this case, and is otherwise fully advised in the premises.

**I. BACKGROUND**

On December 18, 2001, Plaintiff Flexiteek International AS filed a United States patent application with the Patent and Trademark Office ("PTO"), and on May 25, 2005, the application issued as U.S. Patent 6,895,881 ("the '881 patent").  See DE 155 at 6-8.  The '881 patent contained only one claim ("Claim 1").  Five weeks prior to issuance of the '881 patent, however, the Intellectual Property Office of New Zealand ("IPONZ") revoked Flexiteek International AS's New Zealand patent, which mirrored the '881 patent.  In cancelling the New Zealand Patent, IPONZ cited "prior publication" based on the prior art of another inventor.  See DE 49 at 7.

On June 30, 2008, Plaintiffs Flexiteek Americas, Inc., and Flexiteek International AS ("Plaintiffs") brought this action against Defendants PlasTEAK, Inc., and PlasDECK, Inc. ("Defendants"), alleging infringement of the '881 patent.  In Defendants' Answer and Affirmative Defenses [DE 8], they raised a defense of "anticipation," which is the United States equivalent of New Zealand's "prior publication."  DE 8 at 5; DE 297 at 2.  However, they did not cite any particular prior art to support this defense.  See id.  In January 2009, during pretrial discovery, Defendants submitted an interrogatory to Plaintiffs, asking Plaintiffs to "[i]dentify each patent application filed in a foreign country which corresponds to the '881 patent," to "state the current status of the application or patent," and to "identify all art cited by the foreign patent office."  DE 29 at 9.  While Plaintiffs identified the New Zealand patent and that it had been revoked, they stated that they were "without knowledge" of any art cited by the New Zealand office.  Id. at 10.

Then, on February 23, 2009, in a separate, unrelated action, Flexiteek International AS v. Nuteak Decking, Inc., Case No. 08-60995-CIV-Dimitrouleas/Snow (S.D. Fla. filed June 30, 2008) ("Nuteak case"), a party filed a document alerting Defendants in the present action to the prior art cited in the IPONZ decision. See Nuteak Case, DE 33-2 at 9-11.  On March 30, 2009, Defendants supplemented their initial discovery disclosures to indicate that they would be relying on the Nuteak case document in the instant case.  DE 37; DE 52-14 at 3.  On June 5, 2009, the Court granted Plaintiffs' Motion for Summary Judgment on the anticipation defense.  DE 112 at 4-6.  After a jury trial, the Court entered a Final Judgment [DE 158] for Plaintiffs on July 3, 2009.

On July 20, 2009, Defendants filed a Request for Reexamination of the '881

patent with the PTO.  DE 278-1.  Eleven days later, Defendants appealed the Final Judgment to the Federal Circuit.  DE 163.  On January 29, 2010, the PTO found in favor of Defendants, rejecting Claim 1 of the '881 patent on the grounds of anticipation and obviousness.  DE 227-1 at 12.  The PTO's decision was affirmed by the Board of Patent Appeals and Interferences on July 27, 2011.  DE 228-1.  However, at the reexamination hearing, Plaintiffs also presented new claims on the patent by amending and clarifying the language of Claim 1.  The reexamined claims, except for Claim 1, were found to be patentable.  DE 288-3 at 2.  On January 6, 2012, Defendants filed a Motion for Relief from Judgment, which, after it was denied for administrative purposes, they renewed on May 29, 2012.  DE 279, DE 281, DE 287.

On September 10, 2012, Chief Magistrate Judge Barry S. Seltzer issued a Report and Recommendation [DE 297], recommending that the Court grant Defendants' Renewed Motion for Relief from Judgment [DE 287] for two reasons.  First, he found that "under Federal Rule of Civil Procedure 60(b)(5) and (6) it would be unequitable and unjust to . . . enforce [] an injunction and an unexecuted money judgment predicated on a patent claim found to be invalid and cancelled."  DE 297 at 21.  Second, he concluded that Plaintiffs' failure to disclose to the PTO material prior art of which Plaintiffs were aware violated their legal duty of candor, and provided an additional reason to grant Rule 60(b)(6) relief.  Id. at 25-26.  On October 31, 2012, the Court issued an order adopting Judge Setlzer's recommendations, granting Defendants' motion, and dismissing the case with prejudice.  See DE 308.  In the instant motion, Defendants seek a determination that Plaintiffs and/or Plaintiffs' counsel are liable for fees and costs incurred by Defendants in this action.  Plaintiffs oppose the motion.

3

## II. ATTORNEY FEES

In patent infringement suits, the court may, in 'exceptional cases,' award attorney fees to the prevailing party. 35 U.S.C. § 285. In determining whether to award fees under § 285, the Court conducts a two-part inquiry. "First, the [C]ourt must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional." MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 915 (Fed Cir. 2012) (citing Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1327 (Fed. Cir. 2003)). Second, if the Court finds that the case is exceptional, the Court must then determine whether awarding fees and costs is appropriate. MarcTec, 664, F.3d at 916; see also Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1344 (noting that "the amount of attorney fees awarded may be zero, even though the case is exceptional."). Grounds for finding that a case is exceptional include "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; [or] a frivolous or willful infringement." Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1034 (Fed. Cir. 2002). A plaintiff acts in bad faith when it pursues an action in subjective bad faith, and the action is objectively baseless. See MarcTec, 664 F.3d at 916 (citing Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 543-44 (Fed. Cir. 2011)); see also Highmark, Inc. v. Allcare Health Mgmt. Sys., 687 F.3d 1300, 1312 (Fed. Cir. 2012) ("A claim is brought in subjective bad faith if the objective reasonableness of the claim 'was either known or so obvious that it should have been known' by the patentee.") (citing In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007)). Further, "[w]here a patentee 'prolongs litigation in bad faith, an exceptional

finding may be warranted.'" MarcTec, 664 F.3d at 916 (quoting Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1379 (Fed. Cir. 2008)).

"Litigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings." Old Reliable, 635 F.3d at 549 (citing ICU Med., Inc. v. Alaris Med. Sys., Inc., 558 F.3d 1368, 1380 (Fed. Cir. 2009) (affirming an award of attorney fees where a party made "multiple, repeated misrepresentations" to the court)). Litigation misconduct may consist of "bringing vexatious or unjustified suits, discovery abuses, failure to obey orders of the court, or acts that unnecessarily prolong litigation." i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, (Fed. Cir. 2010). When the accused infringer prevails, additional relevant factors include "the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior." Computer Docking Station, 519 F.3d at 1379 (citing Serio-US Indus., Inc. v. Plastic Recovery Techs., Inc., 459 F.3d 1311, 1322 (Fed. Cir. 1992)).

Here, Defendants assert three primary reasons why fees and costs should be awarded pursuant to § 285. First, Defendants contend that this litigation was frivolous from the outset. Second, Defendants argue that Plaintiffs prolonged the litigation in bad faith by continuing to pursue the case even after the PTO rejected Claim 1 of the '881 patent. Third, they allege that Plaintiffs engaged in litigation misconduct by making a series of false representations to the Court, and committing a discovery violation. The Court will address each of these issues in turn.[1]

---

[1] Defendants make three further arguments, each of which is unavailing. First, they contend that Plaintiffs used Defendants' confidential customer lists, provided to

## A. There is not clear and convincing evidence that
## Plaintiffs brought this case in bad faith.

Defendants first argue that Plaintiffs brought this action in bad faith. In support, Defendants argue that the litigation was based on a patent that would not have issued had Plaintiffs disclosed to the PTO the prior art cited by IPONZ. While the Court is mindful of Plaintiffs' failure to disclose material prior art to the PTO, Defendants fail to show clear and convincing evidence of Plaintiffs' subjective bad faith.

Each individual involved with prosecuting a patent application has a duty of candor in dealing with the PTO, which includes a duty to disclose all material information related to patentability. 37 C.F.R. § 1.56(a). "Information is material to patentability when it is not cumulative to information already in the record . . . and . . . [i]t establishes . . . a prima facie case of unpatentability of a claim." 37 C.F.R. § 1.56(b). Applicants are also directed to "[e]liminate clearly irrelevant and marginally pertinent

---

Plaintiffs pursuant to a protective order (see DE 27), to send cease and desist letters to Defendants' customers after the trial was over. However, as Plaintiffs' note — and Defendants do not dispute —  the letter cited by Defendants "is directed to a company whose publicly available website discloses its contact information as well as the fact that it sells PlasDECK products." DE 320 at 21. Thus, the Court sees no evidence that that Plaintiffs misused confidentially-disclosed information. Second, Defendants assert that Plaintiffs mischaracterized the Court's rulings to the PTO during reexamination proceedings, by stating that "the subject patent was declared valid in a federal court decision in 2009 . . . ." DE 309 at 18 (citing DE 301-1 at 13). The Court notes that, even if that statement by itself could have been misleading, Plaintiffs went on to fully and accurately describe the Court's findings, and attached copies of the Court's rulings with respect to anticipation, obviousness, and inequitable conduct. See DE 301-1 at 28-29.  Therefore, there is no evidence that Plaintiffs attempted to mislead the PTO. Finally, Defendants argue that the Court should award them attorneys' fees  under 28 U.S.C. § 1927, because of Plaintiffs' efforts to prevent the introduction of the IPONZ decision or Kemerer patent into evidence. However, Defendants do not cite to any documents in the record that support their assertion. Without citations to the record, the Court cannot find that such relief would be appropriate.

cumulative information." MPEP § 2004(13) (8th ed. 2006).

Here, the Court has already determined that the art cited in the IPONZ decision was material to the patentability of Plaintiffs' claim. See DE 155 at 13.[2] Indeed, when the art referenced by IPONZ was disclosed to the PTO in the reexamination proceedings, the PTO rejected Claim 1 of the '881 patent, finding that it was anticipated by the Kemerer prior art. See DE 227-1 at 12. However, the Court also found that "Plaintiffs put forth a good-faith explanation as to why such information was not disclosed to the PTO." DE 155 at 13. Specifically, the Court found credible the testimony of Svein Abrahamsen, Plaintiffs' President and CEO, that he relied on patent counsel's advice that the prior art referenced by IPONZ need not be submitted because it was redundant of the prior art already submitted or discovered by the PTO. See DE 155 at 10, 13-14. Furthermore, Plaintiffs submitted evidence that included:

> (1) the expert report submitted by Plaintiffs' expert which discussed his review of prior art and his opinion why the '881 patent was valid [DE 52-12]; (2) the testimony of Mr. Abrahamsen that the invention evolved between the issuance of the New Zealand patent and the '881 patent involved in this case [DE 59-4]; and (3) an analysis and chart submitted by Plaintiffs to demonstrate that the prior [art] referenced in the IPONZ decision was 'redundant' of prior art that was disclosed to or discovered by the PTO. [DE 59-3]."

DE 156 at 8. Therefore, at the time that Plaintiffs filed suit, they had a valid patent, and

---

[2] In this Order, the Court cites to several previous orders, including the Findings of Fact and Conclusions of Law re: Defendants' Affirmative Defense of Inequitable Conduct [DE 155], that were vacated pursuant to the Court's Order Adopting and Supplementing Report and Recommendation [DE 308]. Those orders were vacated because they were in part "premised upon the presumed validity of the one patent claim at issue." Report and Recommendation [DE 297] at 37. Nonetheless, the Court finds many of the conclusions contained in such orders to be relevant to understanding this case.

7

a reasonable, objective basis for relying on its continuing validity. Accordingly, the Court finds that there is not clear and convincing evidence that this action was brought in subjective bad faith.

### B. There is not clear and convincing evidence that Plaintiffs prolonged the action in bad faith.

Defendants contend that Plaintiffs needlessly continued the litigation by not staying its actions following the PTO's initial determination on January 29, 2010, that Claim 1 of the '881 patent was invalid. The Court disagrees. The January 29 rejection was not a final cancellation of Claim 1. Rather, as the Court has previously found, the rejection was a relatively preliminary determination subject to further appeals, which Plaintiffs subsequently undertook. See DE 231 at 4-6. Further, as Plaintiffs correctly pointed out, "it is well-established that district courts have discretion to order or deny a stay pending conclusion of a reexamination by the [PTO] under Rule 62(c), Fed. R. Civ P." DE 215 at 5 (citing Lentek Int'l Inc. v. Sharper Image Corp., 169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001)). Therefore, Plaintiffs' decision to oppose a stay of judgment while reexamination was not yet final was well within its rights as a good-faith litigant.

Defendants also argue that Plaintiffs' renewal of their claim for attorney fees while reexamination was still pending was particularly egregious. The Court once again disagrees with this characterization. In the Order Staying Execution of Judgment and Post-Judgment Discovery and Terminating Permanent Injunction [DE 231], the Court stated that:

> Once the Federal Circuit rules on the pending appeal, Plaintiffs may (1) renew their motions for fees and costs by filing a memorandum of law discussing how the Federal Circuits decision impacts the analysis of the 'prevailing party' in this matter, and (2) seek to lift the stay imposed by this

8

Order.

DE 231 at 12.  The Federal Circuit affirmed the Court's Final Judgment [DE 158] in a *per curiam* opinion [DE 234].  As the 'prevailing parties,' Plaintiffs then moved to lift the stay and renewed their claim for fees and costs.  Plaintiffs appear to have been acting directly in accord with the Court's instructions.  Therefore, the Court finds no evidence of bad faith in Plaintiffs' pursuit of fees and costs.

### C. Plaintiffs' Alleged Litigation Misconduct

Defendants allege that Plaintiffs engaged in a wide-ranging pattern of litigation misconduct, including misrepresenting the effect of 35 U.S.C. § 282, making twenty-three false statements, and committing a discovery violation.  The Court has previously addressed Defendants' § 282 arguments, and stands by its previous conclusions.  Because Defendants waited until less than one week before trial to disclose the prior art upon which it intended to rely, such prior art was properly excluded.  See DE 156 at 14-15.  Accordingly, the analysis will focus on Plaintiffs' alleged misrepresentations and discovery violations.  As described below, the Court finds clear and convincing evidence that Plaintiffs made one false statement and committed one discovery violation, and therefore committed litigation misconduct.  However, because of the limited impact of such misconduct on the prosecution of this case, the Court in its discretion will decline to award fees to Defendants.

#### 1. Abrahamsen Declaration

Defendants argue that Mr. Abrahamsen falsely represented, in a declaration to the Court [DE 59-3], that Plaintiffs' U.S. patent application contained new technology, while its New Zealand application contained outdated technology.  See DE 59-3 at 2-4.

Defendants contend that Abrahamsen's statement was refuted by Plaintiffs' acknowledgment that "the claims held invalid by IPONZ were the same claims held invalid in the U.S. application as originally filed." DE 309 at 10 (citing DE 88 at 5). That 'acknowledgment' only referred to Plaintiffs' original application — the one that was rejected by the PTO in May 2004 — and not the later application, to which Abrahamsen was plainly referring. See DE 88 at 4. Defendants further assert that Abrahamsen was disingenuous about when he sought advice from patent counsel in Norway concerning whether the IPONZ decision — and the prior art referenced therein — should be reported to the PTO. In his declaration, Abrahamsen stated that he "inquired with Patent Counsel in Norway and in the United States as to whether the IPONZ Decision should be reported or forwarded to the USPTO." DE 59-3 at 5. However, at trial, he stated that he did not personally seek the advice of counsel, but that he nonetheless received the advice of counsel. See DE 198 at 148:18-149:10. Defendants argue that counsel's advice was not given contemporaneously with the decision to withhold the material prior art references. Rather, Defendants assert, it only came after litigation was filed. The Court observes that Abrahamsen's Declaration does not explicitly state when he received the advice. See DE 59-3 at 4-5. And regardless, the basic point remains: Abrahamsen relied on the advice of patent counsel in deciding how to handle the IPONZ decision. Accordingly, the Court finds no evidence of litigation misconduct or bad faith in the Declaration or testimony of Mr. Abrahamsen.

### 2. Plaintiffs' Pleadings

Defendants allege that Plaintiffs made three false statements in their Sur-Reply

in Opposition to Defendants' Motion for Summary Judgment on Unenforceability [DE 88]. First, Defendants assert that Plaintiffs falsely represented that they "elected not to submit any evidence in the IPONZ proceeding." DE 309 at 11 (quoting DE 88 at 4). Defendants point out that Plaintiffs in fact filed a Counterstatement [DE 124-7] with IPONZ, arguing against the Kemerer reference. Even so, as the Court previously found, Plaintiffs never submitted any *evidence*, and then abandoned the application for business reasons. DE 155 at 5. Thus, the Court finds that the above-quoted statement is a valid statement of the facts.

Second, Defendants contend that Plaintiffs falsely represented that IPONZ never considered the dependent claims in its patent application, and only based its decision on independent claim 1. The Court disagrees. The IPONZ decision states its reasoning as follows:

> The main claim is claim 1. The remaining claims depend from this claim and do not, in my estimation, add any further inventive feature to claim 1. The fate of the remaining claims depends on my finding against claim 1.

DE 124-8 at 6. It appears that IPONZ analyzed the dependent claims and found they did not add anything significant to Claim 1. However, it does appear that the bulk of IPONZ's reasoning was based on its rejection of Claim 1, and it hardly rises to the level of litigation misconduct for counsel to argue in this manner.

Third, Defendants assert that an analysis and chart submitted by Plaintiffs comparing the prior art referenced in the IPONZ decision with prior art disclosed to or discovered by the PTO was misleading, because "[t]he chart makes no reference to other references before the PTO that disclosed 'longitudinal slots,' or 'grooves,' or 'structures.'" DE 309 at 11 (citing DE 59-2 at 10-11). However, Defendants offer no

11

further detailed explanation as to how the prior art cited in the IPONZ decision would not have been redundant.  Defendants do not submit any analysis of the chart's contents, or explanation as to which features are referenced in the prior art outlined in the chart.  Nor did they do so in response to the above-referenced pleading. See DE 66.  As the moving party, Defendants bear the burden of showing Plaintiffs' litigation misconduct by clear and convincing evidence.  Their limited submissions on this issue fail to meet that requirement.

### 3. Plaintiffs' Counsel's Statements

Defendants claim that Plaintiffs' counsel made several false statements at the June 4, 2009, hearing, and at trial two weeks later.  For the most part, the statements Defendants cite to are either taken out of context, or represent attempts to relitigate issues previously examined in this case.  For instance, Defendants point to counsel's contention at the June 4 hearing that "once the decision [to grant the patent] was actually made in New Zealand, it was too late to give it to the United States patent office."  DE 309 at 12 (quoting DE 199 at 65:2-3).  Defendants argue that counsel's position is contradicted by 35 U.S.C. § 301(a)(1), which provides that "[a]ny person at any time may cite to the [PTO] in writing . . . prior art . . . which that person believes to have a bearing on the patentability of any claim of a particular patent."  35 U.S.C. § 301(a)(1).  However, immediately after counsel made the purportedly false statement, he clarified that "you can always send additional information, but the U.S. patent code – I think it's section 1.97, I could be wrong – states that after the issue fee has been paid, we are not going to look at anything you send us."  DE 199 at 65:4-7.  And indeed, 37 C.F.R. § 1.97(d) states that "[a]n information disclosure statement shall be considered

12

by the [PTO] . . . provided that the information disclosure statement is filed on or before payment of the issue fee . . . ." Thus, in context, it appears that counsel was giving a reasonable interpretation of admittedly complex patent regulations.

Similarly, Defendants allege bad faith in Plaintiffs' counsel's objection at trial to the admission of certain documents related to the IPONZ proceeding. Counsel objected on the ground that Defendants had not previously disclosed their intent to rely on those documents. In the instant motion, Defendants reference several occasions on which they disclosed their intent to rely on the IPONZ *decision*. However, counsel's objections were related to the admission of other documents that had been filed with IPONZ, rather than the IPONZ decision itself. See DE 195 at 109:15-110:3; DE 198 at 792:3-798:8. Accordingly, the Court finds that counsel's statements do not constitute litigation misconduct.

### 4. Counsel's Misrepresentation and Plaintiffs' Discovery Violation

Out of the numerous instances of alleged wrongdoing cited by Defendants, the Court finds only two that amount to litigation misconduct. First, at the June 4 hearing, the Court asked Plaintiffs' counsel why the IPONZ decision was immaterial to the PTO's decision. In response, counsel stated that the US patent application focused on "different aspects of the invention" than did the New Zealand patent. DE 199 at 63:12-64:1. Here, Defendants argue that counsel's statement misled the Court because "[b]oth the New Zealand and U.S. applications were based on the PCT application, using identical language and identical claims." DE 309 at 12. The Court agrees. The

'881 patent is a verbatim combination of claims 1 and 15 from the New Zealand patent.[3] Plaintiffs' counsel was disingenuous in representing that the patents differed in any substantive way.  However, counsel's false statement did not affect the length or outcome of the proceedings.  The statement was made in his argument that the IPONZ decision was immaterial and need not have been disclosed to the PTO.  The Court, however, found the argument unpersuasive, and concluded that the IPONZ decision

---

[3] Claim 1 of the New Zealand patent states:

A shape conforming surface covering useful for covering any type of surfaces, wherein the surface covering comprises planks or sheet of flexible material adapted to be interconnected aside of each other thereby forming an assembled surface covering of optional length and width, and which planks are of a material that can be laid in curved formations, and which at the upper surface of the covering is roughened, for instance sanded or filed so as to imitate any unique grain effect of wooden material.

DE 124-9 at 12.  Claim 15 of the New Zealand patent states:

> A surface covering according to any of the preceding claims, wherein the planks or sheet are formed with longitudinal slots at the underside thereof for facilitating forming of curved coverings and for acting as a base for a glue or adhesive material by means of which the surface covering is mounted on a surface recipient.

Id. at 14.  Meanwhile, the US '881 patent provides:

> A shape conforming surface covering useful for covering any type of surfaces, characterized in that the surface covering comprises planks or sheet of flexible material adapted to be interconnected aside of each other thereby forming an assembled surface covering of optional length and width, and which planks are of a material that can be laid in curved formations, and which at the upper surface of the covering is roughened so as to imitate any unique grain effect of wooden material, further characterized in that the planks or sheet are formed with longitudinal slots at the underside thereof for facilitating forming of curved coverings and for acting as a base for a glue or adhesive material by means of which the surface covering is mounted on a surface recipient.

DE 52-3 at 57.

14

was material.  See DE 155 at 13.  The Court nonetheless found for Plaintiffs because Defendants did not establish an intent to deceive.  See id. at 13-14.

Second, as described above, Plaintiffs appear to have given an untruthful response to one of Defendants' interrogatories, by claiming that Plaintiffs were "without knowledge" of prior art cited by IPONZ.  Defendants argue that Plaintiffs' interrogatory response is contradicted by time records of Plaintiffs' attorneys showing that they reviewed the IPONZ decision in September and October 2008.  See DE 184-1 at 16, 17, 26, 32.

Defendants previously brought up this issue in proceedings before Chief Magistrate Judge Barry S. Seltzer in their Renewed Motion for Relief from Judgment [DE 287].  In that context, Judge Seltzer found as follows:

> The undersigned . . . did not take testimony on this issue and, therefore, declines to ascribe to Plaintiffs any intent in disclaiming knowledge of the prior art cited by IPONZ.  Nonetheless, counsel's examinations of the IPONZ revocation, documented on at least five occasions, strongly suggest that Plaintiffs, through counsel, knew — or at the very least, should have known — of the prior art cited by IPONZ.
>
> Less clear, however, is whether as a result of this non-disclosure, Defendants suffered any harm that would warrant equitable relief.  Despite Plaintiffs' failure to disclose, Defendants did learn of the (Kemerer) prior art before trial, albeit through unrelated litigation.  Therefore . . . the consequences of Plaintiffs' discovery violation are speculative.  It cannot be determined whether Defendants, had they been informed of the prior art in January 2009, would have sought a PTO reexamination before trial.  Nor can it be determined whether Defendants would have complied with the statutory (30-day) disclosure requirement . . . .

DE 297 at 27, n. 14.  The Court concurs in Judge Seltzer's findings.  While there is persuasive evidence that Plaintiffs committed a discovery violation, and thus that they engaged in litigation misconduct, there is no suggestion that it affected the course or

15

disposition of this case.  As the Court previously found, "Defendants were aware of the IPONZ decision on March 30,2009, (see DE 52-15), and had access to the documents Plaintiffs' expert reviewed as of April 30, 2009, when they took his deposition." DE 156 at 16.  The Court further noted that, despite having access to such materials, Defendants waited until June 9, 2009 — one week before trial — to specifically cite to the prior art they intended to rely on in support of their affirmative defenses.  Id. at 14-15.  Thus, it is not clear that Plaintiffs' discovery violation actually prolonged or changed the proceedings in this case.

On the basis of counsel's misrepresentation and Plaintiffs' discovery violation, the Court concludes that this case is 'exceptional' under § 285.  However, the Court nonetheless finds that an award of attorney fees would be inappropriate in this action. Generally, "§ 285 is limited to circumstances in which it is necessary to prevent a gross injustice to the accused infringer." Forest Labs, Inc. v. Abbott Labs., 339 F.3d 1324, 1329 (Fed. Cir. 2003); see also Highmark, Inc. v. Allcare Health Mgmt. Sys., 687 F.3d 1300, 1311 (Fed. Cir. 2012) (finding that the purpose of § 285 is to reimburse the alleged infringer for defending an action improperly brought, or prolonged in bad faith). Moreover, "[a]n award of attorney fees is within the discretion of the district judge." Mach. Corp. of Am. v. Gullfiber Ab, 774 F.2d 467, 471 (Fed. Cir. 1985) (citing Orthopedic Equipment Co. v. All Orthopedic Appliances, 707 F.2d 1376, 1384 (Fed. Cir. 1983).  In exercising its discretion in 'exceptional' cases, the Court may consider "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201

(Fed. 1986).  This case was long and contentious, and at its conclusion, the Court finds that neither side has completely clean hands.  Even in the present motion, Defendants at times distort the record and misleadingly take Plaintiffs' quotes out of context.  See DE 309 at 10-11, 14; see also DE 89 at (granting in part Plaintiffs' Motion for Sanctions [DE 68] for Defendants' discovery violations).  Ultimately, Plaintiffs' misconduct did not prejudice the proceedings, nor delay the resolution of this case.  And while prejudice is not a requirement for granting fees, its absence leads the Court to conclude that an award of fees is not appropriate in this case.

### III. CONCLUSION

Thus, for the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion for Determination of Liability for Attorneys' Fees [DE 309] is **DENIED**.  Accordingly, no attorney fees will be awarded in this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 11th day of February, 2013.

／s／ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF.